Ruth Hahn v. Commissioner.
Hahn v. Commissioner
Docket No. 44682.
United States Tax Court
1954 Tax Ct. Memo LEXIS 253; 13 T.C.M. (CCH) 308; T.C.M. (RIA) 54103; March 31, 1954
*253 Held, the amount received by the petitioner from her deceased husband's former employer was a gift and was not additional compensation for his past services. Thomas H. Pirnie, Esq., 619 Higley Building, Cedar Rapids, Ia., for the petitioner. George E. Van Roekel, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency of $1,017.62 in petitioner's income tax for the calendar year 1951. The sole question *254 for our determination is whether a sum of money received by the petitioner from her deceased husband's former employer was includible in her gross income. The petitioner filed a joint income tax return for 1951 with the collector of internal revenue for the district of Iowa. The return was signed by the petitioner on her own behalf and as executrix of her husband's estate. Findings of Fact All of the facts have been stipulated and are so found. The essential facts are as follows. The petitioner, Ruth Hahn, was a resident of Cedar Rapids, Iowa, during 1951. Her husband, Elwood E. Hahn, became an employee of the Cedar Rapids Gas Company, Cedar Rapids, Iowa, in 1911. He worked continuously for that company until December 31, 1941, when its assets were taken over by the Iowa-Illinois Gas and Electric Company, a newly-formed Illinois corporation. He then became an employee of the new company and continued in its employ until his death on August 11, 1951. When he died he was manager of the company's Cedar Rapids branch. In recognition of Elwood's long service the board of directors of the Iowa-Illinois Gas and Electric Company passed a resolution providing that his compensation continue *255 to be paid to his widow through 1951. The resolution read as follows: "RESOLVED, That in recognition of Mr. E. E. Hahn's long service with the Company his compensation continue to be paid to his widow through 1951." Pursuant to this resolution the petitioner, Ruth Hahn, received $4,912.25 from the company in 1951. On July 11, 1952, the respondent determined a deficiency in the 1951 income tax of petitioner and her deceased husband in the amount of $1,017.62, maintaining that the $4,912 received by petitioner from the Iowa-Illinois Gas and Electric Company was includible in her income for the year 1951. The petitioner, in her name only, has filed the petition here for a redetermination of this deficiency. The petitioner and her husband were not on the board of directors of the Iowa-Illinois Gas and Electric Company or its predecessor company, nor were they stockholders in these companies. The company's action in paying petitioner the rest of her husband's compensation for 1951 was not taken pursuant to any contractual obligation. The $4,912 paid by the Iowa-Illinois Gas and Electric Company to petitioner was deducted by the company as a salary expense on its federal income *256 tax return for the year 1951. Prior to the payment in question here the Iowa-Illinois Gas and Electric Company made payments to widows of two other management employees, and one such payment was made after 1951. Opinion The question we have to determine is whether the $4,912.25 received by the petitioner in 1951 from her husband's former employer is includible in her gross income for the taxable year. The Internal Revenue Code includes in the definition of gross income "gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * *". Section 22 (a). "The intent [of this language] is that all receipts in whatever form that come because of labor and service, whether payment could be compelled or not, shall be taxes as arising from labor." . In arguing against the respondent's determination of a deficiency, the petitioner makes the alternative contentions, (a) that the amount received by her was a gift and is, therefore, excluded from her gross income by section 22 (b) (3) of the Code, or (b) that it was received under a contract *257 and is excluded from gross income by section 22(b)(1)(B) [1] of the Code. The respondent contends that the amount paid to the petitioner was additional compensation for her husband's services to the Iowa-Illinois Gas and Electric Company and is includible in the petitioner's gross income under either section 22(a) or section 126(a)(1)(B) of the Code. Before discussing the parties' contentions we can dismiss from our consideration the argument of petitioner that the amount received by her was paid pursuant to contract, since the parties have stipulated that the action of the board of directors in providing that petitioner continue to receive her husband's compensation was not taken as a result of a contract. Not only is this argument of the petitioner expressly defeated by the parties' stipulation but the facts agreed upon give no suggestion that the payment to petitioner was made pursuant to a contract. Whether a transfer of this sort is a gift or compensation is said to depend on the intention of the parties, particularly that of the employer. . *258 Compensation is intended as payment for a benefit received or anticipated. A gift, on the other hand, is an act of "spontaneous generosity" intended to display the donor's gratitude or kind feeling toward the recipient. Payment for services, even though entirely voluntary, may nevertheless be taxable compensation. . Our task, therefore, is to examine the circumstances of the transfer to the petitioner and to single out those which are indicative of the parties' intention in making the transfer; then we must decide what weight each of the relevant circumstances is to be accorded in our eventual determination. The amount in question was paid to the petitioner by the Iowa-Illinois Gas and Electric Company, an Illinois corporation, which being an artificial person can have only the intention of those duly acting on its behalf - here the corporation's board of directors. , reversed on other grounds sub nom. . The respondent contends that the wording of the board *259 of director's resolution in providing for the petitioner indicates that the board intended the payment to her as additional compensation for her husband's past services. The words relied on are: "in recognition of Mr. E. E. Hahn's long service with the Company." While we, of course, look to the board's language as a primary source for determining its intention in acting, our eventual determination cannot be dependent solely on the choice of a particular word or phrase. Cf. . It seems to us that the quoted language is merely an expression of the board of director's gratitude for the valuable services rendered by Elwood. This is not to say, as respondent contends, that because of its gratefulness for his past services the board of directors felt obligated to compensate these services more fully. As the Supreme Court said in the Bogardus case (p. 44): "A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient." In its resolution the board provided that Elwood's "compensation continue to be paid to his widow through 1951." We attach no significance to the board's use of the word "compensation, *260 " since it was obviously used just as a convenient way of fixing the amount to be paid to the petitioner, and was not intended to characterize the payment. The background of the payment to petitioner is that her husband spent 40 years in the employ of the Iowa-Illinois Gas and Electric Company and its predecessor, and he was manager of the company's Cedar Rapids branch at the time of his death. As far as we know Elwood during his lifetime received the compensation agreed upon for his services. Thus, we are unable to point to any duty or constraint upon the board of directors to provide additional compensation for his services. Nor are we able to perceive any benefit anticipated by the corporation or its board of directors in return for the payment to petitioner, other than the feeling of satisfaction that accompanies any act of kindness. Ruth Hahn, according to the agreed facts, never worked for the corporation and was not expected to perform any services in return for the payment to her. Despite the foregoing circumstances the respondent would have us conclude that the board of directors intended its payment to petitioner as additional compensation for Elwood's services. Under the *261 circumstances here we think it is more reasonable to infer that the board of directors, motivated by its gratitude for Elwood's past services and by a desire to be helpful to his widow, intended its payment to petitioner as a gift. Cf. ; . The circumstances which incline us toward this conclusion are the following: (a) While he was living Elwood presumably received the compensation agreed upon for his services. Therefore there was no duty or obligation, legal or otherwise, on the board of directors to make an additional payment for his services. (b) The fact that payment of the amount in question was made directly to the petitioner and not to the legal successor of her husband, his estate. This is some indication that the primary motive for the payment was to help the petitioner, and that it was not motivated by a feeling of obligation to pay something additional for her husband's services. (c) The occasion for the payment to the petitioner was the death of her husband. It seems more likely to us that her bereavement would have inspired sentiments of sympathy and generosity in *262 the board of directors than a feeling of obligation to compensate Elwood's services more fully. There remain a few additional contentions of the respondent to be disposed of. The fact that the Iowa-Illinois Gas and Electric Company deducted the amount paid to the petitioner as a salary expense on its 1951 federal income tax return is pointed to by the respondent as an indication that the corporation's board of directors intended the payment as additional compensation for Elwood's services. The corporation's 1951 income tax return would have been filed subsequent to the passage of the board of director's resolution providing for the petitioner. And while this later act is some evidence of the board's earlier intention, either of itself or as a reflection of the corporation's book entries that were presumably made at about the time of the board's resolution ( , certiorari denied , we do not think that such evidence should be accorded as much weight in determining the board's intention as those circumstances that form the basis of our opinion. The respondent in his brief points *263 out that the stipulated facts do not indicate that the shareholders of the Iowa-Illinois Gas and Electric Company approved or had to approve the payment to the petitioner. This is offered as an indication that the board of directors intended its payment as additional compensation for Elwood's services, since this type of payment would not require the approval of the corporation's shareholders. We agree with the respondent that this is a factor that may tend to indicate an intention on the board of directors to pay compensation, but as in the case of the corporate deduction, it is a factor that must be considered in light of all the circumstantial evidence tending to show the board's intention. When so viewed, the fact that the board of directors did not obtain shareholder approval for its payment to petitioner we deem a consideration of lesser importance to our determination. The respondent makes the further argument, though not very strenuously, that since the corporation made similar payments to the widows of other management employees, it thereby established a policy of such payments. Once such a policy is established, the argument goes, a payment may be more readily considered *264 a part of the employee's compensation, since being aware of the corporation's policy the employee, while working, would consider such a payment to his widow one of his employment benefits. The payment here was made in 1951. Two payments prior to this were made in 1943 and 1945, and one subsequent in 1952. We do not think that these three payments, without more, may be considered as establishing a policy of the corporation. And even if they be so considered, we are not at all certain what policy they would establish: one of gift-making or of paying added compensation. Decision will be entered for the petitioner. Footnotes
1. Section 302(a) and (b), Revenue Act of 1951, 65 Stat. 483, effective for taxable years beginning after December 31, 1950.↩