Marie G. Haskell v. Commissioner.
Haskell v. Commissioner
Docket No. 50058.
United States Tax Court
T.C. Memo 1955-196; 1955 Tax Ct. Memo LEXIS 141; 14 T.C.M. (CCH) 788; T.C.M. (RIA) 55196; July 19, 1955
*141 Lewis F. Powell, Jr., Esq., Electric Building, Richmond, Va., and H. Brice Graves, Esq., for the petitioner. John C. Calhoun, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income taxes for the years 1950 and 1951 in the respective amounts of $5,703.75 and $5,983.85. The only question for decision is whether amounts paid to petitioner by Charles C. Haskell & Company, Incorporated, during the taxable year 1951 are includible in petitioner's gross income. Respondent has conceded on brief that the payments received in 1950 are not includible. Findings of Fact The petitioner is an individual residing at 3214 Noble Avenue, Richmond, Virginia. At the time of the hearing petitioner was 77 years of age. The returns for the period here involved were filed with the collector of internal revenue for the district of Virginia at Richmond, Virginia. Petitioner's husband, Dr. Charles C. Haskell, organized Charles C. Haskell & Company, Incorporated, a Virginia corporation, (hereafter sometimes called the Company) in 1937. The Company is in the business of manufacturing and selling ethical *142 drugs, i.e., drugs that are sold to the final consumer only on the prescription of a physician. From the time of the incorporation of the Company until his death on November 12, 1947, Dr. Haskell was the president and operating head of the Company. At the time of his death the salary paid by the Company to Dr. Haskell was $18,000 per year. At a meeting of the Board of Directors of the Company held on November 21, 1947, consideration was given to the question of continuing to his widow the salary formerly paid to Dr. Haskell. Petitioner at that time was a member of the Board of Directors of the Company and had been a director since the formation of the Company in 1937. She was present at the meeting of the Board held on November 21, 1947, but she withdrew and did not participate in the consideration of the continuation of the salary formerly paid her deceased husband to her. After the consideration of the relevant circumstances the Board of Directors of the Company adopted the following resolution on November 21, 1947: "RESOLVED, that the Company pay to Marie Graham Haskell, widow of Charles C. Haskell, formerly President and Director of the Company and recently deceased, the sum *143 of $15,000 being the equivalent of 10 months salary for Dr. Haskell, exclusive of his bonus of 10% of net profits, such $15,000 to be paid to Marie Graham Haskell within the ten months period beginning January 1st, 1948, at such time or times as may be convenient to the Company." Payments in the amount of $1,500 per month were made to petitioner pursuant to the resolution adopted by the Board of Directors of the Company on November 21, 1947. The last such payment made pursuant to that resolution was made on or about October 1, 1948. At that time the Board of Directors had three members, one of whom was the petitioner. After October 1, 1948, the two members of the Board of Directors of the Company other than petitioner informally agreed to continue the monthly payments of $1,500 to her. One of these directors was petitioner's daughter. Petitioner did not participate in that decision and did not at any time request or suggest that additional payments should be made to her. This informal action by the two members of the Board of Directors of the Company was formalized at a meeting of the Board held on January 29, 1949. At that time the Board was advised by counsel of the general position *144 of the Internal Revenue Service, as stated in I.T. 3329, 1939-2 C.B. 153 that payments made to petitioner, representing a continuation to her of the salary of her deceased husband, would constitute gifts to her. After consideration of the matter, and in the absence of any participation by petitioner, the Board of Directors of the Company at the meeting of January 29, 1949, adopted the following resolutions: "RESOLVED that the sum of $1500 per month being the amount of monthly salary formerly paid Charles C. Haskell, deceased, be paid to his widow, Marie Graham Haskell, for a limited period of time in recognition of the services rendered the Company by the said Charles C. Haskell, such payments to be continued until terminated pursuant to resolutions of the Board of Directors; and further "RESOLVED that the payments made to Marie Graham Haskell up to this time be and the same hereby are approved." The Company continued to pay to petitioner $1,500 per month, or a total of $18,000 per year, pursuant to the resolutions adopted at the meeting of the Board of Directors held on January 29, 1949, throughout the years 1950 and 1951, the taxable years here in issue. The *145 Company had not adopted or developed any plan, policy, or custom of making payments to the widows of deceased employees. Petitioner has been a director and a nominal officer (vice-president) of the Company since its organization. She has never performed any services of any kind for the Company, except those incident to attending meetings of the Board of Directors, and she never has received any compensation of any kind from the Company. Although petitioner owns stock in the Company she has never owned a controlling interest in such stock. However, she and her daughter together held stock control of the Company after her husband's death. For the years 1948 and 1949 the Company deducted on its Federal income tax returns the payments of $18,000 per year made to petitioner pursuant to the aforesaid resolutions of the Board of Directors. Those deductions were allowed by respondent. The Company did not claim and respondent has not allowed a deduction with respect to such payments for the years 1950 and 1951. In 1950 the net income of the Company was $13,268. A dividend of $20,000 was paid to stockholders in that year. In 1951 no dividend was paid because earnings had declined. *146 For each of the years 1948 to 1951, inclusive, the Virginia Department of Taxation has assessed a gift tax against the Company with respect to the payments of $18,000 per year and the Company has paid the gift taxes so assessed. The Company filed timely gift tax returns with the Virginia Department of Taxation beginning with the year 1948, and such returns were filed before any controversy arose between petitioner and respondent concerning the payments made to petitioner. For the years 1948, 1949, 1950, and 1951, petitioner excluded from her gross income for Federal income tax purposes the payments of $18,000 per year made to her by the Company. The ground for excluding such payments was that they represented gifts. For the years 1950 and 1951, respondent determined that such payments were includible in petitioner's gross income. Ultimate Finding The payments in 1951 were gifts to petitioner. Opinion Respondent's contention is "that the payments were intended to be, and in fact were, compensation for services which Dr. Haskell had rendered to the [Company] during his lifetime; and that, in any event, there is no evidence of record from which it can be determined that *147 the payments were gifts to petitioner." The question is one of fact, Alice M. Macfarlane, 19 T.C. 9, and while the Company did not indicate unequivocally whether the payments to petitioner were intended as gifts, it is for us, as "triers of the facts to seek among competing aims or motives the ones that dominated conduct." Peters v. Smith, (C.A. 3, April 11, 1955) 221 Fed. (2d) 721. Here, as in Louise K. Aprill, 13 T.C. 707, "Any services for which compensation could have been intended must have been those of petitioner or her husband." But, here, also as in Aprill, petitioner never rendered any but nominal services to the Company and "no obligation of any kind existed to compensate petitioner further for her husband's past services." The only circumstance that gives us pause is the fact that petitioner and her daughter together owned a controlling stock interest in the Company and respondent has suggested on brief that the payments were in the nature of a distribution of corporate earnings. We think this suggestion is negatived by the facts of record. Dividends were paid when warranted by earnings, and in substantial amounts. There is no *148 evidence to show that mother and daughter took concerted action with respect to the payments and so far as the record goes, petitioner did not participate in any of the corporate action pursuant to which the payments were made. Our conclusion that the 1951 payments were gifts, and so not includible in gross income is based on all of the facts of record. See Black v. Davis, (N.D., Ala., 1955) - Fed. Supp. -; 1955 P-H Fed. [*] 72,589). Decision will be entered for the petitioner