**Hilda BOUNDS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7642.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 4, 1958.

Decided Dec. 15, 1958.

John A. Selby, Washington, D. C. (Henry Ravenel, Washington, D. C., on brief), for appellant.

S. Dee Hanson, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., Leon H. A. Pierson, U. S. Atty., and Robert E. Cahill and J. Jefferson Miller, II, Asst. U. S. Attys., Baltimore, Md., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

In this suit for an income tax refund we are called upon to determine whether money paid by a corporation to the widow of a deceased executive constitutes a non-taxable gift or taxable compensation.[1]

The taxpayer, widow of George C. Bounds, received in 1952 $20,000 from the Bounds Package Corporation "as recognition in part of the great contribution made by George C. Bounds, and, as additional compensation for services rendered to the Corporation by George C. Bounds during his lifetime * * *." The District Court concluded that the payments were intended to be and were additional compensation for services to the corporation rendered by the taxpayer's deceased husband and, consequently, taxable to the widow as ordinary income under Sec. 22(a), Internal Revenue Code of 1939. The taxpayer contends that the payments represent a gift, hence exempt from taxation under Sec. 22(b) (3), Internal Revenue Code of 1939.[2]

---

1. The pertinent parts of Sec. 22 of the Internal Revenue Code of 1939 read as follows:

"Sec. 22. Gross income

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *

"(3) Gifts, bequests, devises, and inheritances. The value of property acquired by gift, bequest, devise, or inheritance. * * *" 26 U.S.C.A. § 22.

Section 22(b) (1) (B), Internal Revenue Code of 1939, excludes from gross income amounts up to $5,000.00 received "under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee." The litigants agree that this section is inapplicable here, for the payments were not made pursuant to contract.

2. While this controversy arises under the Internal Revenue Code of 1939, the law has now been amended, and the problem with which we are here concerned cannot arise in the future. The new law rejects the tests which have been found unsatisfactory in practice and unequivocally makes nontaxable payments to the employee's estate or family, made by rea-

The facts were stipulated at the trial. George C. Bounds, a founder of the Bounds Package Corporation in 1940, since that time served as president and a director of the corporation until his death in September, 1951. Shortly after his death, the Board of Directors, at a special meeting, unanimously adopted the following resolution:

"Resolved: That the Corporation pay to Mrs. Hilda H. Bounds, widow of George C. Bounds, deceased, as recognition in part of the great contribution made by George C. Bounds to the success of the business of the Corporation, and, as additional compensation for services rendered to the Corporation by George C.

Bounds during his lifetime, the sum of Twenty Thousand Dollars ($20,-000.00) per year, payable quarter yearly on the first day of January, April, July and October of each year, beginning on January 1, 1952, and ending on October 1, 1953." [3]

Pursuant to this resolution Mrs. Bounds, the taxpayer, received in 1952 $20,000, which was equal in amount to her husband's annual salary from the corporation for the three years before his death. The corporation also paid to the estate of George C. Bounds $5,000, which represented his accrued salary for the third quarter of 1951 and was included as income in the return filed by the administrator.[4] This item is not in-

---

son of his death; but it imposes a $5,-000.00 limitation. The 1939 provision that the payments be made pursuant to contract has been eliminated from the 1954 Code.

Section 101(b) (1) and (2) of the Internal Revenue Code of 1954 specifically provides:

"(b) Employees' death benefits.

"(1) General rule. Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee.

"(2) Special rules for paragraph (1).

"(A) $5,000 limitation. The aggregate amounts excludable under paragraph (1) with respect to the death of any employee shall not exceed $5,000." 26 U.S. C.A. § 101(b) (1, 2).

3. Earlier in the meeting, the following resolution was unanimously adopted also:

"Whereas, Bounds Package Corporation was formed in the year 1940 and at that time took over certain business and properties theretofore owned by George C. Bounds and William H. Phillips, Co-partners trading as 'G. A. Bounds and Company,' and at the time of said incorporation Mr. George C. Bounds became a Director and President of this Corporation, and

"Whereas, from the date of its incorporation until the date of his death Mr. George C. Bounds had been President and a Director of the Corporation, was actively interested in and participating in the growth, development and improve-

ment of its business and due in large measure to his earnest effort, clear vision, wise counsel and good judgment, the business thus begun has prospered and now holds an honored place in the business community of Wicomico County and throughout the Eastern Shore of Maryland, and

"Whereas, the death of Mr. Bounds on September 27, 1951 has deprived the Corporation of one of its Directors, Officers, and guiding spirits and has deprived the other officers, directors, employees and associates of the Corporation a strong and able executive and associate and a warm and beloved friend.

"Now, Therefore, Be It Resolved: That the corporate records of Bounds Package Corporation mark the passing of George C. Bounds and note the sorrow of all those who have been associated with him.

"And Be It Further Resolved: That this Resolution be spread on the minutes of the Corporation and that a copy thereof duly inscribed, by the President and Treasurer of the Corporation be delivered to Mrs. Hilda H. Bounds, widow of our former President."

4. The administrator included this amount in the gross income of the estate as required by Sec. 126(a) (1) (A), enacted in 1942 as part of the Internal Revenue Code of 1939:

"Sec. 126. Income in respect of decedents

"(a) Inclusion in gross income.

"(1) General rule. The amount of all items of gross income in respect of a decedent which are not properly includible

volved in the controversy. When the resolution was adopted, the taxpayer owned approximately 25% of the corporation's outstanding capital stock, but has never been an officer or employee of the corporation.

The board's action was voluntary, as the corporation was not obligated in any way to provide payments to Bounds' widow or estate. Never theretofore had the corporation made any payments to the estate or to members of the family of a deceased employee or officer except to the extent necessary to compensate the deceased for services rendered to the date of his death.

On its books the corporation recorded the payments as "compensation to officer's widow" and in its federal income tax returns claimed a deduction for them as a business expense. The taxpayer included this amount as gross income in her tax returns but filed a timely claim for refund of $3,190.89, on the theory that the $20,000 was a gift to her from the corporation and, therefore, not includible in her taxable income. However, neither she nor the corporation filed a federal gift tax return in respect of this transaction.

■ The District Court's determination that the payments were intended by the corporation to be and were compensation, having been drawn from stipulated primary facts, is a conclusion of law, or at least a determination of a mixed question of law and ultimate fact; and, as such, this court can, on review, substitute its judgment for that of the District Court as a matter of law if the record so warrants. We are not bound by the "clearly erroneous" rule, Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Bogardus v. Commissioner, 1937, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32; Simpson v. United States, 7 Cir., 261 F.2d 497; Fahs v.

Taylor, 5 Cir., 1956, 239 F.2d 224, 226; Northup v. United States, 2 Cir., 1957, 240 F.2d 304, 307.

■ A study of the record persuades us that the payments to the widow constituted a gift. The taxpayer herself rendered no services to the corporation for which she should have been compensated. It is to be noted that the corporation paid the husband's accrued salary of $5,000.00 directly to his estate but made the further payment directly to the widow. To us this indicates that the corporation viewed the two payments as different in nature. Clearly, the lesser sum was compensation, and if the corporation regarded the $20,000.00 similarly, then to be completely consistent it should likewise have been paid to the estate. See Bausch's Estate v. Commissioner, 2 Cir., 1951, 186 F.2d 313, 314. Where the recipient has rendered services, it is reasonable to presume that the payment is compensation, Wallace v. Commissioner, 5 Cir., 1955, 219 F.2d 855, 857. But the converse is equally persuasive—where the recipient has not rendered services, the presumption is that the payment is a gift.

While it is true that some cases have held that for the payment to be taxable the payee need not have rendered the services, the element always present was an understanding, tacit or otherwise, by the one rendering the services that additional payments would or might be made to some third person. See Varnedoe v. Allen, 5 Cir., 1946, 158 F.2d 467, certiorari denied, 1947, 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272, where a fireman's widow received payments pursuant to a statutory right, and Fisher v. United States, D.C.Mass.1955, 129 F.Supp. 759, 762, where a corporation paid the widow the unpaid balance of the retirement compensation it had already voted to pay the husband for one year. In the case at bar, however, nothing in the record

in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent." 26 U.S.C.A. § 126(a) (1) (A).

indicates that the taxpayer's husband was ever led to believe that the corporation would provide compensation for his services over and above his fixed salary. Nor is there a showing that he had not in reality been fully compensated by the corporation during his lifetime.

We do not take issue with the principal that a voluntary payment can nonetheless be compensation, Old Colony Trust Co. v. Commissioner, 1929, 279 U.S. 716, 730, 49 S.Ct. 499, 73 L.Ed. 918, but the common element found in the cases cited by the Government, and conspicuously absent here, is a long-established policy of the employer to provide for the wife of a deceased officer for a limited period after his death. Even though it was never suggested in those cases that the widow had an enforceable legal right to the payments, the courts have recognized not only the "moral" obligation of the employer to continue the established practice but also the immediate benefits derived by the employer from such a plan. As the Seventh Circuit recently stated in Simpson v. United States, 7 Cir., 261 F.2d 497, 500:

> "We find from the record that the corporation did derive a benefit from the payment. It was made in pursuance of a long-established plan consistently followed by the corporation. Adherence to the plan demonstrates that these payments to the widows of deceased executives were made for the purpose of encouraging living executives to continue in their employment by the corporation. The fact that these executives were retained by the corporation is evidence that it was to the interest of the corporation that they did not depart and take with them their training and experience in the company's affairs, developed during a long period of employment there. The plan was a means of retaining a valuable asset as long as possible. Insofar as the plan in question tended to deter the resignation of these key executives, it

would be unrealistic to say that it was not for the benefit of the corporation.

\*　\*　\*　\*　\*　\*

> "While the resolution of 1950 attempted to protect the company from any legal obligation to make payments, it clearly imposed a moral obligation. As a practical matter, the company had to pay taxpayer in order to preserve its integrity in the eyes of the other executives whose wives were to receive similar payments in the future \*　\*　\*."

It can be seen that payment to a widow pursuant to a long-established plan, although legally unenforceable, tends to overcome the gratuitous nature of the transaction. Where, however, the payment is in every sense voluntary and there is no ensuing benefit to the corporation, the donative intent is apparent. Such is the case here. Undoubtedly, the courts which have treated payments to widows as compensation have been influenced in large measure by the employer's established practice to provide for widows of deceased executives. See Bausch's Estate v. Commissioner, 2 Cir., 1951, 186 F.2d 313, 314. This feature distinguishes Simpson v. United States, supra, relied on by the Commissioner, from the instant case. Indeed, Simpson held that the taxpayer's reliance on Luntz v. Commissioner, 1958, 29 T.C. 647 was unfounded because the employer (in Luntz) had established no pension plan. Also see Fisher v. United States, D.C.Mass.1955, 129 F.Supp. 759, 762, which distinguished Hahn v. Commissioner, 13 T.C.M. 308, CCH Dec. 20, 249(M) because there "the employee continued to work for the employer until his death, and the payments made to the widow were then considered for the first time."

Yet the Commissioner argues that his position is sustained by the corporation's characterizing the payments as "additional compensation for services

rendered." While it is true that a party's description of a transaction is entitled to some weight, it would strain reason to think that by the words chosen here, the true nature of the transaction could be transformed into something completely different. To borrow the words of the Government's brief, " * * whether the payments in question represented income or gifts to the taxpayer cannot be answered by mere definitions or categories. Rather, it presents a problem to be decided in the light of all the facts and circumstances showing the intention of the parties, particularly that of the corporation-payor." Indeed, in several instances the Commissioner himself has been successful in circumventing the payor's characterization of the transaction. See Wallace v. Commissioner, 5 Cir., 1955, 219 F.2d 855 and Nickelsburg v. Commissioner, 2 Cir., 1946, 154 F.2d 70. In each of these cases, even though the corporation adopted a resolution bestowing a monetary "gift" and even failed to claim an income tax deduction, the payment was, nevertheless, held upon the facts to be compensation for services rendered by the recipient.

■ It is not enough to say that the payments here were motivated by the past efforts of the taxpayer's husband, for a gift is nonetheless a gift because inspired by gratitude for past faithful services. Bogardus v. Commissioner, 1937, 302 U.S. 34, 44, 58 S.Ct. 61, 82 L.Ed. 32. Rarely is a gift bestowed upon a complete stranger who has never had even an indirect relation to the donor or to someone related to the donor. In any event, it seems more reasonable to view the payments here in question as being prompted by the taxpayer's widowed position rather than by the desire of the corporation to additionally compensate her for services already performed by her husband; for full compensation had been paid for the decedent's services, and nothing more was due or could be claimed by anyone.

■ If in the course of a eulogistic resolution recognizing the decedent's personal merits and past contributions to the company, the additional payment is denominated "compensation," this does not alter the realities; just as calling the payment a "gift" would not be effective to make it such, if it in fact bore the marks of true compensation. Substance, not form, must prevail in each instance.

Numerous cases, both in District Courts and in the Tax Court, have held that payments to widows under circumstances similar to the instant case constituted gifts and not compensation, even though in many instances the payments were treated as deductions in the payor's income tax return, and the amounts were measured by the salary of the widow's husband at the time of his death. See Jackson v. Granquist, D.C.Ore.1957, 169 F.Supp. 442, 443, 52 A.F.T.R. 1476, where, "in recognition of the services to the corporation rendered by" her husband, the widow was paid "$2,000.00 per month of his salary" for one year; Bank of the Southwest Nat'l Ass'n, Houston v. United States, D.C.S.D.Tex.1958, 165 F.Supp. 200, 202, where the widow was paid for five months "the amount of salary formerly paid to" her late husband; Nixon v. United States, 57–2 USTC, Paragraph 9982 (E.D.Tenn., 1957), not allowing the corporation's deduction of the payments to "affect the rights of the widow."

In Hahn v. Commissioner, 13 T.C.M. 308, CCH Dec. 20, 249(M) (1954), where the facts were stipulated, the corporation resolved "That, in recognition of Mr. E. E. Hahn's long service with the Company *his compensation continue* to be paid to his widow through 1951." (Our italics.) Regarding the company's deduction of the payments as a salary expense, the Tax Court said: " * * * we do not think that such evidence should be accorded as much weight in determining the board's intention as those circumstances that form the basis of our opinion." The payments were

held to be gifts because the husband had been fully compensated during his lifetime, thereby rendering the payments voluntary; the payments were made directly to the widow and not to the estate; and "the occasion for the payment to the petitioner was the death of her husband."

In Luntz v. Commissioner, 1958, 29 T.C. 647, CCH Dec. 22, 801, the widow received for two years "the same salary as received by [her late husband] ... *in consideration of past services* rendered by" him to the company. (Our italics.) On stipulated facts, the payment was held to be a gift even though the company was allowed a deduction in its income tax returns. The controlling factors were (1) the voluntary nature of the payment (2) made directly to the widow, (3) who performed no services to the corporation, (4) which received no benefit from the payment, (5) the husband having been fully compensated for his services during his lifetime. To the same effect is Estate of Arthur W. Hellstrom v. Commissioner, 1955, 24 T.C. 916, tried on stipulated facts. Judge Rice there said:

"In view of the other evidence in the record, we attach no particular significance to the fact that the corporation claimed deductions on its returns for the amount paid to petitioner. We think the principal motive of the corporation in making the payment was its desire to do an act of kindness for petitioner."

See also Haskell v. Commissioner, 14 T.C.M. 788 (1955), and Estate of Albert W. Morse, CCH Dec. 22, 916(M) (March 31, 1958).

Even where the corporation had frequently in the past made payments to widows of deceased officers and executives, the payments have been held to be gifts. Rodner v. United States, D.C. S.D.N.Y.1957, 149 F.Supp. 233. The reasoning of Judge Dimock is persuasive. After noting that Section 22(b)(1)(B), Internal Revenue Code of 1939,

exempts from gross income payments up to $5,000 under a *contract* of an employer providing for payments to a beneficiary of an employee by reason of the death of the employee, he states, at page 237 of 149 F.Supp.:

"By those provisions Congress excluded from gross income for income tax purposes the first $5,000 of amounts paid as death benefits to a beneficiary of an employee pursuant to contract. As stated above footnote 1, death benefits paid to a beneficiary pursuant to contract are not exempt as gifts. I do not believe that Congress would favor exempting up to $5,000 death benefits paid pursuant to contract but taxing the whole of gratuitous death benefits. If I am right in this thought, the provision in section 22(b)(1)(B) of the Internal Revenue Code of 1939 limiting the $5,000 exemption to death benefits paid under contract was in perfect harmony with the above cited cases which hold gratuitous death benefits to be exempt as gifts. The legislative intention seems to me to have been that all death benefits that were gratuitous should be exempt and all over $5,000 that were paid under contract should be taxable."

It is significant that the Commissioner has recognized the weakness of his position in cases like the one now before us. In light of the unmistakable trend of judicial decisions holding similar payments to be gifts, as noted above, the Commissioner promulgated an Information Release on August 25, 1958. He therein formally announced that the Internal Revenue Service would not litigate, under the Internal Revenue Code of 1939, cases involving the taxability of voluntary payments to widows by their deceased husbands' employers "unless there is clear evidence that they were intended as compensation for services, or where the payments may be considered as dividends." Specifically excluded from the purview of this release

884

were payments made pursuant to a contract or otherwise binding obligation or a plan or statute in effect before the husband's death.[5] None of these circumstances, as we have noted, is present in the instant case.

In oral argument the Government attorney stated that this suit has been pressed in spite of the Commissioner's anounced policy because the litigation was commenced prior to August, 1958, the date of the Information Release. We fail to perceive the logic or justice of the distinction. Much deference is due administrative interpretation and practice when it is employed to bring symmetry and fairness into the law; but there is no binding force in an administrative arrangement which decrees the wholesale renunciation of an interpretation already severely battered in litigation, yet persists in it in a single case for a reason so completely unconvincing. It is not too late on this appeal to conform the treatment of this case to that administratively accorded by the Commissioner to cases in the same category—and to reach a result that is correct on the merits.

█ Taken as a whole, the facts and circumstances surrounding the transaction lead to the conclusion that the payments did constitute a non-taxable gift to the taxpayer.

Reversed, and remanded for a judgment in accordance with this opinion.

5. The full text of the Information Release reads as follows:
"In view of a number of adverse court decisions in cases involving voluntary payments to widows by their deceased husbands' employers, the Internal Revenue Service today announced that it will no longer litigate, under the Internal Revenue Code of 1939, cases involving the taxability of such payments unless there is clear evidence that they were intended as compensation for services, or where the payments may be considered as dividends. Payments which will be considered 'voluntary' in applying this policy do not include payments made pursuant to a contract or otherwise binding obligation or pursuant to a plan or statute in effect before the husband's death.

"In line with this new litigation policy, field offices of the Service will similarly dispose of 1939 Code cases not yet in litigation.

"The Service emphasized that this announcement represents a litigation policy, implemented by consistent administrative action, pertaining to 1939 Code cases only. The position of the Service with respect to cases in this area arising under the Internal Revenue Code of 1954 involves other considerations and will be made the subject of a future announcement."