Estate of Julius B. Cronheim, Deceased, Richard B. Cronheim, Executor, and Emily F. Cronheim, surviving wife v. Commissioner.
Estate of Cronheim v. Commissioner
Docket No. 69747.
United States Tax Court
T.C. Memo 1961-232; 1961 Tax Ct. Memo LEXIS 117; 20 T.C.M. (CCH) 1144; T.C.M. (RIA) 61232; August 17, 1961
William D. Crampton, Esq., for the petitioners. Robert B. Milsten, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in income tax of petitioners for the taxable year 1955 in the amount of $7,872.68. Petitioners have stipulated to certain adjustments, and the issue remaining for our determination is whether certain payments by a corporation to the widow of a corporate officer during the year in question constitute gifts or ordinary income to the widow. Findings of Fact Some of the facts have been stipulated and are so found. *118 Petitioner Emily F. Cronheim (hereinafter referred to as Emily) is the surviving spouse of Julius B. Cronheim, deceased, and resides in St. Louis, Missouri. Richard B. Cronheim is the duly appointed and qualified executor of the Estate of Julius B. Cronheim, deceased, currently being administered under the jurisdiction of the Probate Court of the City of St. Louis, Missouri. Julius B. Cronheim (hereinafter referred to as Julius) died in St. Louis, Missouri, on May 15, 1955. Emily and the estate of her deceased husband filed a joint Federal income tax return for the taxable year 1955 with the district director of internal revenue at St. Louis, Missouri. Petitioners used the cash basis of accounting. At the time of his death Julius was a vice president and a director of Fulton Bag and Cotton Mills (now known as Fulton Cotton Mills, Inc., both hereinafter referred to as Fulton) and had been employed by Fulton for 56 years. At the time of his death Julius was receiving an annual salary of $44,200 from Fulton, none of which was then unpaid. On that date Julius owned 1,000 and Emily 200 shares of the 480,000 outstanding shares of common stock of Fulton. On May 31, 1955, the board *119 of directors of Fulton held a special meeting, at which the following resolutions, inter alia, were adopted: On motion, duly seconded, it was RESOLVED, That a committee be appointed to draft a resolution regarding the passing of Mr. Julius B. Cronheim, and that a copy of the resolution be spread on the minutes and sent to the family of Mr. Julius B. Cronheim. On motion, duly seconded, it was RESOLVED, That the salary of Mr. Julius B. Cronheim be continued at the same rate through our fiscal year ending November 30, 1955. Pursuant to the first resolution quoted above, the following resolution was spread on the minutes of Fulton sometime after the adjournment of the meeting: The Board of Directors of Fulton Bag & Cotton Mills, assembled in Special Meeting on May 31, 1955, unanimously passed the following Resolution: WHEREAS, on May 15, 1955, Almighty God removed Julius B. Cronheim from this earth, and we are thereby deprived of his friendship and counsel, and WHEREAS, Julius B. Cronheim loyally served this Company and the Textile Bag Industry for nearly fifty-six years, beginning as office boy and moving up through his own intelligence, ability and personality to a position *120 of highest respect and responsibility, and WHEREAS, we recognize his talent to train and bring out the latent abilities of young men and to encourage and foster sound and fair thinking and industry on the part of all of those with whom he was associated; THEREFORE, BE IT RESOLVED that there be recorded in the minutes of this meeting our feeling of affection and respect for him and our deepest sympathy for his family. Pursuant to the second resolution quoted above Fulton paid Emily the sum of $23,853.87 during the taxable year 1955. On its books and records and on its return for the taxable year ended November 26, 1955, Fulton deducted the compensation paid Julius B. Cronheim during the period December 1, 1954 through May 15, 1955, in the aggregate amount of $20,766 under the heading of "Compensation of Officers." On its books and records, the $23,853.87 paid to petitioner Emily during the remainder of its fiscal year ended November 26, 1955, was deducted by Fulton under the heading of "Extraneous Payments." On its said return, Fulton deducted the amount of $23,853.87 paid to petitioner Emily under the heading of "Salaries and Wages." Petitioner Emily was not at any time, either *121 before or after the death of Julius, an employee, officer or director of Fulton and has never performed services for Fulton. Fulton had no severance pay or pension plan in operation at Julius' death. This situation was not felt desirable and later attention was given to this matter. Every long-time officer of Fulton who had died leaving a widow or minor children had had his salary continued for some period of time. In the five such cases prior to Julius' the salary continuation had varied from 2 months up to 8 or 9 months. The board of directors had the same intention in Julius' instance as it had regarding the prior salary continuations. In the prior instances the resolutions contained the phrases "in recognition of the services rendered" and directed payment to be made to the surviving widow. In two other instances in which long-time employees of Fulton had died without leaving widows and/or children, no salary continuations were authorized by Fulton and it made no payments of any kind to any beneficiary of such employees. On June 1, 1955, Norman E. Elsas, president and chairman of the board of directors of Fulton, wrote a letter to Richard B. Cronheim, petitioner herein as *122 executor of Julius' estate and son of Emily and Julius, which letter read in part as follows: At a Special Meeting of the Board of Directors yesterday, a Resolution was passed expressing the deep sorrow of the members of the Board occasioned by the absence of your Father. The cording of this Resolution is being undertaken and will be spread upon the minutes of the meeting, and appropriate copies forwarded to Em and to you. Immediately thereafter the Board voted to continue payment of Julius' salary, at the current rate, (payable to Em), for the rest of our fiscal year - through November 30, 1955. Needless to say, I would have liked to have seen this period extended further, but under the present circumstance as to Company earnings, (or rather, the lack of them), I feel that the decision was a proper one. (So that you will be familiar with the practice of the Board in similar situations in the past, salary payment has been continued for periods varying from two to eight months. In the case of my Father, I remember quite clearly it was a little less than five months). In response to this letter Richard B. Cronheim wrote a letter reading in part as follows: Thank you very much *123 for your letter of June 1st and I am sure that Mother and I will be delighted to have copies of the Resolution. As far as the continuation of Dad's salary is concerned, would you immediately: 1. Have checks made payable and deposited to the credit of Emily F. Cronheim. 2. Would you check with Mr. Brogdon and see if a continuation of Social Security and Withholding Tax deductions are in order after May 15th. Pursuant to Richard's request all payments were made to Emily. The board of directors was unaware of and made no inquiry into Emily's financial situation. The only discussion by the board was the size of the payments, since Fulton had relatively poor earnings at that time. In continuing Julius' salary the board was motivated in part by his long personal service to Fulton, and in part by the personal affection of many of the directors for Julius. Emily was the beneficiary of $87,833 of the $89,833 of insurance on Julius' life. Policies totaling $22,500 were pledged to secure a loan in the amount of $19,500 outstanding at Julius' death. Emily and the estate of Julius reported dividend income for 1955 in the amount of $3,653.25. Respondent's determination allowed $5,000 *124 of the payments to Emily as excludable employee death benefits and included $18,853.87 of the payments in gross income. Opinion Respondent contends that the payments to Emily were compensation and thus taxable income to the extent they exceeded the $5,000 exclusion provided in section 101(b). [1] In the alternative he argues that even if the payments were gifts, the aforementioned statutory provision limits the exclusion otherwise available under section 102. [2]
*125 Petitioners must prove their contention that the payments constituted a gift. The test to be applied is an inquiry into the dominant reason that explains the donor's action in making the transfer. Commissioner v. Duberstein, 363 U.S. 278 (1960). The touchstones in this area were elucidated in Duberstein thusly (363 U.S. at p. 285): And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41, it is not a gift. And, conversely, "[where] the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." Robertson v. United States, 343 U.S. 711, 714. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246; "out of affection, respect, admiration, charity or like impulses." Robertson v. United States, supra, at 714. * * * Applying these criteria we find the instant payments to be compensatory and not donative *126 in nature. The board of directors made no effort to learn of Emily's needs, and in fact had no knowledge thereof. While financial plight, known to the donor, is not an indispensable element of every true gift, it does indeed supply strong evidence in support. Such evidence is lacking here. Emily's needs were neither the prerequisite for payment nor the measure of payment. The payments were Julius' salary for the remainder of Fulton's fiscal year, without consideration of Emily's current or future needs. Simpson v. United States, 261 F. 2d 497 (C.A. 7, 1958); Estate of Mervin G. Pierpont, 35 T.C. 65 (1960), on appeal (C.A. 4, January 13, 1961). It is most significant that the resolutions continuing the salary of Julius and eulogizing him did not specifically mention Emily either by name or as the widow. The memorial resolution was directed to "the family," whereas no payee was designated for the future salary payments. The record is unclear as to the origin of the direction to pay Emily directly, but such directive is absent from the resolutions mentioned above. An intent to make a gift to Emily is not revealed by a resolve merely to continue Julius' salary, *127 since such salary would normally go into his estate and be presumptively compensation. Willkie v. Commissioner, 127 F. 2d 953 (C.A. 6, 1942). Three directors of Fulton testified that their intent in continuing the salary of Julius was to help Emily adjust to her new standard of living, although Julius did not die at an early age. They also indicated that the payments to widows in the prior cases were similarly motivated. We conclude that the intent of the corporation was to give tangible expression to its appreciation for the years of faithful service to it by Julius. Roy I. Martin, 36 T.C. - (June 21, 1961). Such intent makes these payments more akin to bonuses than to gifts. The corporation followed a practice of salary continuations for varying short periods of time to widows and surviving minor children of deceased, long-time executives. Payments had been made in all such instances in the past, and we think it is a reasonable conclusion that such an officer would expect that his survivors would similarly be accommodated. Simpson v. United States, supra.Compare Bounds v. United States, 262 F. 2d 876 (C.A. 4, 1958), where the court said *128 at page 881: It can be seen that payment to a widow pursuant to a long-established plan, although legally unenforceable, tends to overcome the gratuitous nature of the transaction. * * * courts which have treated payments to widows as compensation have been influenced in large measure by the employer's established practice to provide for widows of deceased executives. * * * This feature distinguishes Simpson v. United States, supra, * * * from the instant case. Indeed, Simpson held that the taxpayer's reliance on Luntz v. Commissioner, 1958, 29 T.C. 647, was unfounded because the employer (in Luntz) had established no pension plan. The correspondence between Richard and Fulton's president and the desire of certain board members to formalize the providing for survivors of deceased officers support our conclusion that Fulton felt morally obligated to make some payment to Emily. Commissioner v. Duberstein, supra. On director testified that a major consideration in making salary continuations was the length of decedent's service. The term "salary" was used, and the continuation resolution was separate and distinct from the memorial resolution. Fulton treated *129 these payments as compensation on its income tax return. We conclude that the payments involved herein were intended to be additional compensation for services rendered by Julius and paid by reason of his death; therefore, to the extent they exceed $5000, they are taxable ordinary income to Emily. Our above conclusion makes it unnecessary to decide the vexing question, whether bona fide gifts by corporations to widows of deceased officers by reason of their deaths are subject to the limitation contained in section 101(b)(2)(A). Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954. SEC. 101. CERTAIN DEATH BENEFITS. * * *
(b) Employees' Death Benefits. - (1) General Rule. - Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee. (2) Special Rules For Paragraph (1). - (A) $5,000 Limitation. - The aggregate amounts excludable under paragraph (1) with respect to the death of any employee shall not exceed $5,000. ↩
2. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule. - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩