Gladys W. SIMPSON, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

Nos. 12275, 12276.

United States Court of Appeals
Seventh Circuit.

Nov. 7, 1958.

Finnegan, Circuit Judge, dissented.

Charles K. Rice, Asst. Atty. Gen., Kenneth E. Levin, Atty., Tax Division, U. S.

Dept. of Justice, Washington, D. C., Marks Alexander, U. S. Atty., Springfield, Ill., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant.

Albert G. Webber, III, Decatur, Ill., Richard J. Welsh, Decatur, Ill., for plaintiff-appellee.

Before FINNEGAN, SCHNACKENBERG and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant [1] has appealed from a judgment entered in the district court in favor of plaintiff,[2] in her suit against the government to recover part of her income tax paid for the year 1951, on the ground that a payment of $33,750 to her from the Mueller Company, of which her deceased husband had been an executive, was not income but was a gift under the exclusion provisions of section 22(b)(3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b)(3). The district court held that the payment was a gift.[3]

From the district court's findings of fact, the undisputed testimony and exhibits, the following statement of facts is constructed.

Prior to January 16, 1951, J. Wilbur Simpson and taxpayer were husband and wife residing in Decatur, Illinois. For 52 years, he had been employed by the Mueller Company,[4] and at the time of his death was a director, executive vice president, and a member of the executive committee.

On August 18, 1910, the board of directors of the corporation [5] adopted a resolution providing that it would "in case of the death of a Director in the active service of this company, for the benefit of his surviving widow, and children, * * * pay the widow, and in case of her death, the surviving children of any such deceased director, the usual and stipulated salary for the unexpired month, in which such death may occur, and also to pay monthly, for the period of six months thereafter, such salary * * *."

Thereafter, upon the decease of various company executives, the corporation's board of directors followed this policy by adopting resolutions in 1928,[6] 1940,[7] 1944 [8] and 1947.[9]

1. Herein also referred to as the government.

2. Herein also referred to as the taxpayer.

3. One of the two numbers given this appeal relates to an ineffective attempt to appeal from an order which found the issues for plaintiff.

4. Sometimes referred to herein as the corporation.

5. Then known as H. Mueller Manufacturing Company.

6. "Resolved: That this Company pay Mrs. Mary E. Mueller, widow of Mr. Philip Mueller, his usual and stipulated salary for the month of January and also for the period of six months thereafter, in accordance with the Resolution passed by the Board of Directors on August 18, 1910."

7. "Resolved: That this company pay Mrs. Addie E. Mueller, widow of Mr. Robert Mueller, his usual and stipulated salary for the period of six months from April to September inclusive, in accordance with the resolution passed by the Board of Directors on August 18, 1910."

8. "Be It Further Resolved: That in conformity with the previous practice in similar cases, as evidenced by the resolution adopted by this Board on February 3, 1928, and a similar resolution adopted after the death of Mr. Robert Mueller, that the salary, in the amount previously fixed by this Board, for Mr. Adolph Mueller, Chairman of the Board of Directors of the Company, be paid to the above mentioned Minnie B. Mueller, in recognition of services rendered by Adolph Mueller, to this company, for a period of six consecutive months, beginning June 1, 1944."

9. "Be It Further Resolved: That in further recognition of services rendered to this company by William E. Mueller, and in conformity with the previous practices in similar cases, as evidenced by the resolution adopted by this Board on February 3, 1928, and a similar resolution adopted after the death of Mr. Robert Mueller, and a similar resolution adopted May 24, 1944, after the death of Mr. Adolph Mueller, that the salary in the amount previously fixed by this Board for Mr. William E. Mueller, President of this corporation, be paid to the above

Simpson died on January 16, 1951, at which time there was in effect a resolution, adopted by the executive committee on February 6, 1950, containing the following language:

"Whereas, this company for many years has followed a general policy of paying to the widow of a deceased executive, an amount equivalent to the salary for such executive, for a period as is evidenced by the resolution adopted by the Board of Directors of Mueller Co. on February 3, 1928; also by a similar resolution adopted after the death of Mr. Robert Mueller in March of 1940; also by a similar resolution adopted May 24, 1944, following the death of Mr. Adolph Mueller; and by a similar resolution adopted October 2, 1947, following the death of Mr. W. E. Mueller, and

"Whereas, it is the desire to restate the said existing policy in more explicit terms,

"Therefore, Be It Resolved: That in pursuance of the aforesaid policy, and in consideration of services rendered to this company by Lucien W. Mueller, J. W. Simpson, Albert G. Webber, Jr., Frank H. Mueller, Clarence C. Roarick, Leo Wiant, Odie E. Walker, Emmett M. Reedy, J. L. Logsdon and LeRoy Evans, Mueller Co. will pay, in the event of the death of any or either of them, to his surviving widow, a sum equal to nine months salary of any of the last named executives, at their regular rate, at the date of death, upon and subject to the following terms and conditions:

"1. Such payment shall be made only if said individual is an executive in good standing with Mueller Co. or any affiliate or subsidiary, regularly performing the duties and responsibilities of the position held by him on the date of this resolution or those of a higher position to which he may be promoted after the date of this resolution. If such deceased executive is absent from his regular duties on a regularly recognized leave of absence, he shall be deemed covered by this policy.

"2. Any payment hereunder will be only to the surviving widow of such decedent and if he leaves no widow surviving him, then no payment shall be made hereunder. By widow shall be meant a wife living with such executive at the time of his decease and not living separate and apart by reason of any legal proceeding or otherwise.

"3. That no one named or referred to in this resolution shall acquire or be deemed to have any vested rights by virtue hereof; it being expressly understood that this company, acting by its directors, does not waive or relinquish its right to alter, modify, revoke or rescind this resolution at any time in whole or in part and before or after the death of any individual named or referred to herein."

Following the death of Simpson, taxpayer received a payment of $33,750 from the corporation under date of February 5, 1951, in pursuance of the latter resolution.

The corporation charged the payment to an account called "Special Salaries", and deducted it as an expense. This deduction was allowed by the Internal Revenue Service.

Taxpayer has never been an employee, or owned stock, of the corporation. Simpson owned 1,500 shares out of 136,000 authorized, which were subject to a repurchase agreement and not disposable to anyone except the corporation.

The salary earned by Simpson prior to his death had been fully paid to him or his estate. In addition to the payment in question here, taxpayer received in

mentioned Pauline V. Mueller for a period of six (6) months beginning October 1, 1947, and that such amount equal to the

aforesaid six months salary be paid to her in a single sum."

1951 $6,893.37 from the Mueller Company pension trust, part of which was taxable and part excludable from income pursuant to a special ruling by the Commissioner of Internal Revenue.

The district court made findings of fact, that the corporation derived no benefit from the payment to taxpayer and that it intended to make a gift to taxpayer. The government disagrees with these findings. Otherwise the parties agree that the foregoing statement of facts is correct.

■ The government contends that the payment of $33,750 to taxpayer by the Mueller Company, of which her husband had been an executive until his death, was intended to be compensation rather than a gift. On the other hand, taxpayer insists that said payment was intended as a gift to her, and is, in fact, a gift within the meaning of the Internal Revenue Code of 1939.

Section 22(a) of the Internal Revenue Code of 1939 [10] is broad enough in its definition of "gross income" to include the payment in question, unless it is covered by § 22(b)(3) [11] which expressly excludes from gross income the value of property acquired by gift.

■ The sweeping scope of § 22(a) is readily apparent. This language was used by Congress to assert in this field "the full measure of its taxing power", Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 429, 75 S.Ct. 473, 99 L.Ed. 483. The Supreme Court has given a liberal construction to this broad phraseology in recognition of the intent of Congress to tax all gains except those specifically exempted. The importance of the phrase "gains or profits and income derived from any source whatever" has been too frequently recognied to say now that it adds nothing to the meaning of "gross income", ibid., 348 U.S. 430, 75 S.Ct. 476. While the income taxed is described in sweeping terms, the exemptions are specifically stated and should be construed with re-

straint. Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477.

■ The district court arrived at a conclusion of law that the payment in question by the corporation to taxpayer constituted a gift to her within the meaning of § 22(b)(3) of the 1939 code and was, therefore, excludable from her gross income for that year. Whether we view this as a conclusion of law or a determination of a mixed question of law and fact, we have a right to review the record and substitute our findings and conclusions for those of the district court in the event we find the record warrants such action. We are not bound in situations such as this by Rule 52(a) of the Federal Rules of Civil Procedure.[12] Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32; Weible v. United States, 9 Cir., 1957, 244 F.2d 158, 161; Commissioner of Internal Revenue v. Fiske's Estate, 7 Cir., 1942, 128 F.2d 487, 489.

As to the controverted findings of the district court that the corporation derived no benefit from the payment to the taxpayer and that the corporation, in making that payment, intended to make a gift to her, which are involved in the district court's conclusions of law, we believe that the district court erred.

We find from the record that the corporation did derive a benefit from the payment. It was made in pursuance of a long-established plan consistently followed by the corporation. Adherence to the plan demonstrates that these payments to the widows of deceased executives were made for the purpose of encouraging living executives to continue in their employment by the corporation. The fact that these executives were retained by the corporation is evidence that it was to the interest of the corporation that they did not depart and take with them their training and experience in the company's affairs, developed during a long period of employment there. The plan was a means of retaining a valuable

10. 26 U.S.C.A. 1952 Ed. § 22(a).

11. 26 U.S.C.A. 1952 Ed. § 22(b)(3).

12. 28 U.S.C.A. Rule 52(a).

asset as long as possible. Insofar as the plan in question tended to deter the resignation of these key executives, it would be unrealistic to say that it was not for the benefit of the corporation.

■■ We also find from the record that the corporation in making the payment in question to taxpayer did not *intend* to make a gift to her. No one contends that a donor has a right to deduct the amount of the value of a gift when reporting to the government for income tax purposes and such is not the law. Moreover the payments on the corporation's books were entered in an account known as "Special *Salaries*". It does violence to language to say that one who intends to make a gift enters the transaction on his books as a salary paid. Again, the resolution of February 6, 1950, under which the payment in question was made to taxpayer recites that the corporation would make the payment "in consideration of services rendered to this company * * * by J. W. Simpson". This is not the language of a gift. It was an authorization to pay out funds of the company for a consideration. A gift has no *quid pro quo*.

■ In law there is no presumption of a gift. This is true generally. It is supported by the strict provisions of § 22 (b)(3), supra.

If this payment were a gift its only purpose could have been to help the widow of a deceased executive. Its amount would have been measured in the light of the needs of the widow. However, that was not the measure applied in making the payment. It represented a sum previously fixed and equal to the husband's salary for nine months, without consideration of the current needs of the recipient. Bausch's Estate v. Commissioner, 2 Cir., 1951, 186 F.2d 313; Poorman v. Commissioner, 9 Cir., 1942, 131 F.2d 946; Willkie v. Commissioner, 6 Cir., 1942, 127 F.2d 953.

While the resolution of 1950 attempted to protect the company from any legal obligation to make payments, it clearly imposed a moral obligation. As a practical matter, the company had to pay taxpayer in order to preserve its integrity in the eyes of the other executives whose wives were to receive similar payments in the future, and it never in fact tried to revoke the resolution or refused to make payment under it. In any event, legal obligation to pay is not necessary to characterize a payment as compensatory. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730, 49 S.Ct. 499, 73 L.Ed. 918. The important consideration is that the payment was made in pursuance of an established plan, which was just as effective as an incentive to induce executives to remain with the company as any legal undertaking on the part of the company to make such payments. Bausch's Estate v. Commissioner, supra.

The district court's findings that at no time was taxpayer a shareholder or an employee of the corporation, and performed no service for it, are irrelevant in a determination of whether the payment in question was a gift. The fact is that, in view of the existing plan, services were rendered to the corporation by Simpson.

The case of Luntz v. Commissioner, 1958, 29 T.C. 647 is relied on by taxpayer. Her reliance is not well-founded. It appears that in that case, after the death of the president of a steel corporation, its board of directors passed a resolution providing for, (1) a payment of "a temporary pension" to his widow, equivalent to his annual salary for two years and (2) a similar payment to the widows of two directors in the event of their husbands' deaths. The Tax Court held that, while the resolution set up a plan for the wives of the two living directors, the wife of the deceased president was not a member of that class. It disagreed with the contention of the Commissioner of Internal Revenue that the resolution exhibited a plan including the president's widow. Consequently it held that the payment to her was a gift.

For the reasons above set forth, the judgment of the district court is reversed.

Reversed.

FINNEGAN, Circuit Judge (dissenting).

This is one of those cases where the uncontroverted operative facts are so simple their meaning leads us off in divergent directions searching for etiological implications in a check given this widowed taxpayer by her deceased husband's employer. Mrs. Simpson's husband commenced working for the Mueller Company in August, 1899 and remained, save for an insignificant interval, with that Corporation until he died on January 16, 1951. Admittedly there was absent any legal obligation existing by and between Mueller and Mr. Simpson to pay over money to Mrs. Simpson on the death of her husband and a careful reading of the original transcript not only supports that fact, but shows an utter lack of any contrary evidence.

Mueller first articulated its policy of taking care of widows surviving their husbands, who had been employed by Mueller, through a resolution adopted by its Board of Directors on August 18, 1910. A footnote in the history of federal taxation will show the Sixteenth Amendment was ratified on February 25, 1913. And nothing in this record indicates that Mueller embarked on its policy with the aim of circumventing tax laws culminating in I.R.C.1939.

Mueller's accounting treatment of the disbursement to Mrs. Simpson is beside the point when all we are deciding is whether she received taxable income or a gift. Names of accounts mean little in financial analysis unless, of course, we were confronted with some uniform system of accounts prescribed by a regulatory body pursuant to enabling legislation. From the face of the record, and speaking from an accounting viewpoint, Mueller acquired no asset for the cash expended, and no liability had been discharged. But the Corporation's cash had been reduced and net worth must be similarly reduced in order for the debits to continue to equal the credits. See Shugerman, Accounting for Lawyers, 35 (1952). Even if Mueller charged an account happily labeled "Gifts to Widows," the economic impact on the corporation would have been the same for it diminished its asset-cash and good accounting practice would require appropriate bookkeeping entries reflecting that change in cash and its offset. Mueller's duty to correctly reflect its financial position for its stockholders supersedes the need for some euphemistic account title congenial to Mrs. Simpson.

" 'Expenses' is a word of broad import. It has no fixed definition. It is of varying signification and is dependent for its precise meaning upon its connection and the purpose to be accomplished by its use. It is comprehensive enough to include a wide range of disbursements. Standing alone, it is ambiguous. Its breadth of meaning shows the diversity of subjects which may be included within it." Pittsfield & N. A. R. Corp. v. Boston & A. R. Co., 1927, 260 Mass. 390, 157 N.E. 611, 614. Whatever reason there might have been, and none appears of record, for allowing Mueller the payment to Mrs. Simpson as a deductible expense is irrelevant. This payment was obviously occasioned by Mr. Simpson's death not his past services.

Although this is an appeal ,from the district court much that was said concerning Rule 52, Federal Rules of Civil Procedure in Wisconsin Memorial Park Co. v. Commissioner of Internal Revenue, 7 Cir., 1958, 255 F.2d 751, 754, has pertinency here. The only way Mueller's voluntary payment can be hurdled is by penalizing Mrs. Simpson for suspected state of mind imputed to various Mueller directors for the past 50 years. Instead of abandoning Rule 52 I would obey it and affirm the judgments. My position would be misunderstood if interpreted as opening the floodgates for tax avoidance in remotely similar situations. The key here lies in the record and particular facts.