**Mildred W. SMITH, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 13815.**

United States Court of Appeals Third Circuit.

Argued March 5, 1962.

Decided June 28, 1962.

As Amended July 30, 1962.

Charles I. Thompson, Jr., Philadelphia, Pa. (William R. Spofford, Philadelphia, Pa., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for petitioner.

Giora Ben-Horin, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Department of Justice, Washington, D. C., on the brief), for respondent.

Before STALEY, HASTIE and SMITH, Circuit Judges.

STALEY, Circuit Judge.

The question on this appeal is whether the Tax Court's finding that certain payments made by a corporation to the

widow of a deceased officer did not constitute a gift is clearly erroneous.

Mildred W. Smith, petitioner on this appeal, is the remarried widow of Norman F. Wiss, who died on September 15, 1954. Prior to his death, deceased had been an employee of J. Wiss & Sons Co. ("corporation") for thirty-five years. Pursuant to a resolution passed by its board of directors, the corporation paid petitioner $38,841.37 in 1955 and $33,008.04 in 1956.[1] Petitioner failed to report these payments as income.

The Commissioner concluded that the payments constituted ordinary income and assessed a deficiency against petitioner which the Tax Court upheld.[2] The Tax Court found as a fact that the "dominant motive behind these payments was to give tangible recognition (by way of additional compensation) to the highly valuable services rendered by the decedent over a long period of time," and that the payments were not made as a gift to petitioner.

On appeal, petitioner contends that the Tax Court erroneously concluded that the Supreme Court in Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), changed the law regarding the criteria relevant in resolving the factual inquiry as to whether the payments constituted a gift, and that when the facts of this case are considered in light of the criteria before Duberstein, the payments clearly were gifts.[3] The Commissioner, on the other hand, contends that under Duberstein the question is purely factual, and the Tax Court's findings here must be affirmed unless they are clearly erroneous.

Because of the importance that the parties attach to Commissioner v. Duberstein, supra, we think it advisable to review in some detail the facts and holding of that decision. Duberstein involved two separate appeals.[4] In one, the taxpayer had received an automobile from a business associate which he failed to report as income, deeming it to be a gift. The other appeal involved payments made by an employer to an employee who had resigned his position. The Supreme Court concluded that the Tax Court's finding that the transfer of the automobile did not constitute a gift was not clearly erroneous, and remanded the other appeal to the trial court for more explicit findings of fact as to whether the payments constituted a gift. The Court refused the Commissioner's invitation to spell out a new test for resolving the question of gift versus income. What ultimately controls, it said, is the intention of the transferor. In making this determination, the proper criteria are those that logically disclose the reason for the transferor's action—"the dominant reason that explains his action in making the transfer." 363 U.S. at page 286, 80 S.Ct. at page 1197. The mere absence of a moral or legal obligation to make the payments does not establish a gift, and a voluntary transfer of property without any consideration or compensation, therefore, although it constitutes a common law gift, is not necessarily a gift within the tax statutes. Reviewing prior decisions, the Court, at 363 U.S. 285, 80 S.Ct. at 1197, said: "A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity,' * * * 'out of af-

1. In the year 1954, the corporation also paid petitioner a $5,000 death benefit and $16,000 in periodic payments. These payments are not in dispute here.

2. The Tax Court's findings and opinion are not officially reported.

3. In this regard, petitioner lists the following factors which she contends were decisive in past Tax Court decisions: (1) payments were made to the widow rather than to the husband's estate; (2) trans-

feree never performed any service for the corporation; (3) the corporation was under no obligation to deceased or transferee to make the payments; (4) deceased was fully and adequately compensated for all services he performed to the corporation; (5) the corporation derived no benefits from the payments; (6) the corporation did not characterize or treat the payments as compensation.

4. No. 376, Commissioner v. Duberstein; No. 546, Stanton v. United States.

fection, respect, admiration, charity or like impulses.'" If the payment proceeds, however, primarily from a moral duty or legal obligation, or finds its genesis in an anticipated benefit that is economic in nature, it is not a gift. But the presence or absence of economic benefit is irrelevant where the transfer is made in return for services rendered.

The Commissioner contended in Duberstein that payments made by an employer to an employee are by and large taxable as income, and that the concept of a gift is inconsistent with the payments being deductible as business expenses, and that since a gift involves personal elements, a business corporation cannot make a gift of it assets. The Court refused to adopt these so-called "principles" or "presumptions," saying:

"Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that the primary weight in this area must be given to the conclusions of the trier of fact." 363 U.S. at 289, 80 S.Ct. at 1198.

United States v. Kaiser, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960), was decided the same day as Duberstein. In Kaiser, the jury determined that strike benefits by way of room rent and food vouchers, rendered by a labor union to striking members, constituted a gift. The trial judge, however, entered judgment n. o. v. in favor of the government, concluding that the assistance constituted income as a matter of law. In concluding that the jury's finding should not have been put aside, the Court reviewed the facts and unmistakably delineated the scope of appellate review:

"* * * the jury could have concluded that assistance, rendered as it was to a class of persons in the community in economic need, proceeded primarily from generosity or charity, rather than from the incentive of anticipated economic benefit. We can hardly say that, as a matter of law, the fact that these transfers were made to one having a sympathetic interest with the giver prevents them from being a gift. * * *

"We need not stop to speculate as to what conclusion we would have drawn had we sat in the jury box rather than those who did. *The question is one of the allocation of power to decide the question; and once we say that such conclusions could with reason be reached on the evidence, * * * our reviewing authority is exhausted * * *.*" (Emphasis supplied.) 363 U.S. at 304–305, 80 S.Ct. at 1207.

█ In summary, determination of whether a transfer constitutes a gift is a factual one, which must be made on a case-by-case approach, resting with the trier of fact which is to make it in light of all the relevant facts and circumstances. Thus, under Duberstein and Kaiser, such a determination must be affirmed unless it is clearly erroneous.

█ A review of the record convinces us that the Tax Court did not rely on irrelevant facts and circumstances, that its finding is a permissible one and is not clearly erroneous. In 1948 and again in 1953, the board of directors considered the adoption of a pension plan for its employees that was to be supplemented by payments to the officers' widows. One of the reasons given for not adopting the program of supplemental payments was that the board thought it inappropriate to make arrangements for officers that the corporation could not afford for other employees. Between 1951 and decedent's death, the corporation made death payments to the widows of four

employees. The payments, as here, were made monthly for varying periods, although in amounts substantially less than petitioner received. The four deceased employees were, however, salesmen, not executives, but received salaries in excess of $10,000. The deceased, on the other hand, received an annual salary of $80,000 at the time of death and had been associated with the corporation as officer, director or employee for over thirty-five years. Although the widows were not precluded from disclosing the payments, the corporation sought to receive no publicity for them.

When Norman F. Wiss, died, the corporation had fifty-seven common stockholders. Decedent and petitioner held approximately 7.7% of the stock, while most of the remaining major stockholders were related to decedent. Large blocks of stock were held by the estate of decedent's father, and by his sister, brother, nephew and cousin. Four board members attended the September 23, 1954, meeting that authorized the payments in question. One was decedent's brother, two were his cousins, while the fourth was a nephew.

The first resolution adopted by the board that day read as follows:

"Resolved, that the following memorial be inscribed in the minutes of the directors of the company, and that a copy thereof be sent to Mildred S. Wiss, the surviving widow of Mr. Norman F. Wiss:

"The passing of a relative and associate and friend is always difficult to accept; and it is particularly so in the case of Norman F. Wiss with whom we were in close association for many years.

"Norman had been a director of the company for 35 years, and for 23 years he was vice president and treasurer, all of which offices he filled with distinction and with great benefit to the company.

"The sound financial condition of the company and its excellent reputation throughout the world are attributable in a large measure to the tireless energies, sound business judgment, high ideals and farsightedness of Norman. We owe a great deal to him, and we take this opportunity of expressing our gratitude for his valuable and loyal services and our deepest regret over his sudden and early death."

The second provides that

"Whereas, Norman F. Wiss who was a director, vice president and treasurer of this company for many years died on September 15th, 1954 leaving his widow, Mildred S. Wiss, surviving; and

"Whereas, the directors of the company feel that it is proper and fitting that recognition be made of the valuable and loyal services which he rendered to the company.

"Now, therefore, be it Resolved that the company make the following payments to the said Mildred S. Wiss:

"At the rate of $4583.33 per month (that being the salary of Norman F. Wiss at the time of his death, excluding bonuses) from September 15th, 1954 to December 31st, 1954.

"$\frac{7}{24}$ths of the bonus which would have been paid to Mr. Wiss for the year 1954 (the $\frac{7}{24}$ths being based on the period from September 15th, 1954 to December 31st, 1954; the remaining $\frac{17}{24}$ths of the said bonus to be paid to the executors of the estate of the said Norman F. Wiss on account of compensation for services from January 1st, 1954 to the date of his death which occurred on September 15th, 1954).

"$2750.67 per month for the two (2) year period beginning January 1st, 1955 and ending December 31st, 1956. The said payments to be made on the first day of each month beginning January 1st, 1955.

"$5,000.00; payment as a death benefit under the Internal Revenue Code."

The bonus plan referred to was instituted in 1950. After paying a bonus that year, the corporation directed its treasurer to set aside on its books the sum of $64,000 as additional compensation from which decedent was to receive $20,000 if certain conditions prevailed. The bonus plan was continued, and after an audit it was determined that the conditions required for payment of the additional amount existed for the year 1954. Decedent's estate was paid $17/24$ of the $20,000 which decedent would have been entitled to had he remained with the corporation until December 31, 1954, and the petitioner received the other $7/24$. The petitioner was paid the following amounts pursuant to the resolution:

|  | 1954 | 1955 | 1956 |
|---|---|---|---|
| Death benefits | $5,000 | | |
| 7/24 of bonus | | $ 5,833.33 | |
| Periodic payments | 16,000 | 33,008.04 | $33,008.04 |

The payments were deducted by the corporation as business expenses. The president of the corporation who was also a member of the board testified that the payments were based in part on decedent's long and valuable service to the corporation as well as the amount of his annual income, and that the payments would not have been made had there not been an employer-employee relationship between the corporation and the decedent.

There was also some testimony that the transfer was intended as a gift, and that it was made in order to help petitioner financially during the period of transition following her husband's death. The president also testified, however, that the second resolution was adopted authorizing payment without the petitioner's needs being discussed, and no concern was shown for income that she had from other sources. The petitioner reported as income in the form of dividends, interest and gains from the sale or exchange of property $35,376.90 in the year 1955 and $37,089.67 for 1956. Petitioner was never employed by the corporation, and there was evidence in the record that decedent's salary at the time of death was a fair and reasonable one. But these and other facts which the petitioner presses need not be reviewed in detail, for what we have outlined above clearly indicates that the conclusion of the Tax Court was a permissible one.

The petitioner cites a number of decisions in support of her position. Several of them, Olsen's Estate v. Commissioner, 302 F.2d 671 (C.A.8, 1962); United States v. Frankel, 302 F.2d 666 (C.A.8, 1962); Kuntz' Estate v. Commissioner, 300 F.2d 849 (C.A.6, 1962); Poyner v. Commissioner, 301 F.2d 287 (C.A.4, 1962); and United States v. Kasynski, 284 F.2d 143 (C.A.10, 1960), were handed down after Duberstein. A review of these decisions does little more than point out the nature of our inquiry, and their inapplicability is clear, for "the question here remains basically one of fact, for determination on a case-by-case basis." Duberstein v. Commissioner, 363 U.S. at 290, 80 S.Ct. at 1199. We cannot exceed the narrow function assigned to us, regardless of what others have done.

The decision of the Tax Court will be affirmed.