**UNITED STATES of America,**
**Appellant,**

v.

**Mabel Carroll PIXTON, Individually,**
**et al., Appellees.**

**No. 20229.**

United States Court of Appeals
Fifth Circuit.

Jan. 7, 1964.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Giora Ben-Horin, Attys., Dept. of Justice, Washington, D. C., for appellant.

Gordon B. Kahn, Sam W. Pipes, III, Irwin W. Coleman, Jr., Mobile, Ala., Lyons, Pipes & Cook, Mobile, Ala., of counsel, for appellees.

Before RIVES, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

In this tax case we are called upon to review the district court's holding that a "widow's bonus", salary continuation payment, was an excludable gift under Section 102(a) of the 1954 Code rather than taxable income of employees' death benefits under Section 61(a).[1] We affirm.

The facts are stipulated. For many years, Marvin Pixton was an officer and director of the Ingalls Iron Works Company of Alabama. After his death, May 14, 1957, Ingalls paid Mrs. Pixton $22,500 under a resolution of the board of directors authorizing the payment "in recognition of the long, devoted and faithful service of Mr. Pixton". The widow was never connected with the company as an employee, director, or shareholder. The payment carried no understanding that Mrs. Pixton perform any service for the company. The widow did not solicit the payment. *Ingalls has no past history of such payments upon the death of an employee, officer, or director.* In its treatment of the expenditure, Ingalls did not retain the withholding tax, but deducted the amount paid as a salary expense. Its right to the deduction is now in litigation. Perhaps for this reason, Robert Ingalls, president of the company, wrote the taxpayer, "Dear Mabel: I regret I am not in a position to say that the six month's salary * * * was a gift". Contrary to the stipulation that Ingalls had "no past history" of salary continuation payments, Ingalls wrote the District Director of the Internal Revenue Service, "It has been the policy of the company to pay to the wife or estate of a deceased top executive approximately one-half year's salary upon such executive's death".

On these agreed facts, the district court found that the payment to Mabel Pixton "was a benevolent act and was intended to be and was made as an expression of sympathy, generosity and kindness to the widow of a deceased officer, director and employee". The court held that the payment "proceeded from a detached disinterested generosity growing out of affection, respect, kindness, sym-

---

1. Section 102(a) provides:
   "Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."
   Section 61(a) (1) provides:
   "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
   "(1) Compensation for services, including fees, commissions, and similar items;
   * * * * * *"

pathy or like impulses". This is the language of Duberstein.

Commissioner v. Duberstein, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed. 1218, is the latest and leading Supreme Court decision on both the definition of a gift in a "gift v. income" case and the scope of appellate review of a trial court's application of that definition.[2] In Duberstein the Supreme Court restated the principles established in Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, and emphasized that in order for a transfer to qualify as a gift, the transfer must not be motivated by a legal or moral obligation. It must not be a payment for services, past or future, and there must be no expectancy of future gain. Rather, "the dominant reason that explains [the transferor's] action in making the transfer" a gift must be a " 'detached and disinterested generosity,' * * * 'out of affection, respect, admiration, charity or like impulses' ". 363 U.S. at 285, 80 S.Ct. at 1197, 4 L.Ed.2d 1218.

■ Both Bogardus and Duberstein require the clearly erroneous rule as the standard of review. Bogardus, however, focused on the transferor's intention as the controlling criterion. Duberstein focused on the reasons for the transfer, as the trier of fact weighs the reasons— somewhat metaphysically. According to Duberstein, the decision "must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." 363 U.S. 289, 80 S.Ct. 1198, 4 L.Ed.2d 1218. We read this gestalt criterion as establishing a more limited standard of review that the Court laid down in Bogardus. In the gift v. income arena, therefore, we are steeled to untidy results. See Smith v. Commissioner, 3 Cir. 1962, 305 F.2d 778, cert. den'd, 1962, 371 U.S. 904, 83 S.Ct. 208, 9 L.Ed.2d 165; Martin v. Commissioner, 3 Cir. 1962, 305 F.2d 290, cert. den'd, 1962, 371 U.S. 904, 83 S.Ct. 209, 9 L.Ed.2d 165; Gaugler v. United States, 2 Cir. 1963, 312 F.2d 681; Poyner v. Commissioner, 4 Cir. 1962, 301 F.2d 287; United States v. Kasynski, 10 Cir. 1960, 284 F.2d 143; United States v. Frankel, 8 Cir. 1962, 302 F.2d 666, cert. den'd, 1962, 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed. 2d 165; Olsen's Estate v. Commissioner, 8 Cir. 1962, 302 F.2d 671, cert. den'd, 1962, 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed. 2d 165; Kuntz' Estate v. Commissioner, 6 Cir. 1962, 300 F.2d 849, cert. den'd, 1962, 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed. 2d 165; Estate of Cronheim v. Commissioner, 8 Cir. 1963, 323 F.2d 706. Even with the special dispensation Galena Oaks grants when the basic facts are undisputed, the reviewing court is still bound by the clearly erroneous rule. Galena Oaks Corporation v. Scofield, 5 Cir. 1954, 218 F.2d 217, 219.[3]

The trial judge, drawing on his "experience with the mainsprings of human conduct", found that the payment to Mrs. Pixton was an act of benevolence. Had this Court been the trial court, we might have reached the opposite result. But, drawing on our "experience with the mainsprings of human conduct", we cannot say that the trial judge was clearly erroneous.

The judgment is affirmed.

---

2. For a recent discussion of the subject, see Klein, An Enigma in the Federal Income Tax: The Meaning of the Word "Gift," 48 Minn.L.Rev. 215 (1963).

3. "Even in instances where an appellate court is in as good a position to decide as a trial court, it should not disregard the trial court's finding, for to do so impairs confidence in the trial courts and multiplies appeals with attendant expense and delay". Wright, Federal Courts 376 (1963). But see Griswold, Of Time and Attitudes—Professor Hart and Judge Arnold, 74 Harv.L.Rev. 81, 86–90 (1960) criticizing Duberstein as typical of "excessive deference to triers of fact."