Molly May **MEYER**, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

No. 62–615–EC.

United States District Court
S. D. California,
Central Division.

July 8, 1965.

M. L. Real, U. S. Atty., Loyal E. Keir, Ronald S. Morrow, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

Wyshak & Wyshak, Robert H. Wyshak, Los Angeles, Cal., for plaintiff.

CRARY, District Judge.

This action involves a claim of plaintiff taxpayer, Molly May Meyer, for refund of certain Federal income taxes in the sum of $7,206.00 paid in the year 1958. Plaintiff timely filed her Federal tax return for the year 1958 and included therein was the amount of $16,900.00 less a $5,000.00 exclusion as "widow's continuance pay." It is the tax on the amount in the sum above noted that is in dispute.

The monies constituting the said sum of $16,900.00 consisted of twenty-six weekly payments of $650.00 each paid to plaintiff commencing January 11, 1958, by 20th Century Fox Film Corporation (hereafter referred to as 20th Century) following the death of plaintiff's husband, Fred S. Meyer, on December 9, 1957. The payments were made pursuant to action of the Board of Directors of 20th Century on December 26, 1957, as reflected by the minutes of meeting on that day as follows:

"The chairman noted with regret the death of Fred L. Meyer, Director of Industrial Relations at the Studio. He recommended a payment to the widow, Mrs. Meyer of $16,900.00, being the equivalent of six months' salary at $650.00 per week. After discussion, such payment was authorized." (Stipulation of Fact 30.)

The Pre-Trial Order provides that the only issues of fact to be determined are:

1. Whether the payments made to the plaintiff after her husband's death by his employer were gifts.
2. Whether, at the time of her husband's death, Twentieth Century Fox Film Corporation had a plan or practice of making such payments as are here in issue.
3. Whether Twentieth Century Fox Film Corporation has deducted the amounts paid the plaintiff on its Federal income tax returns as an overhead expense in the years following the payments.
4. Whether all amounts paid to the plaintiff have been deducted except for a small percentage that was allocated to television residual income which will eventually be amortized. (Paragraph VI.)

The said Pre-Trial Order further provides that the only issue of law to be determined is whether the amounts paid to plaintiff after her husband's death by his employer were gifts within the meaning of Section 102 of the Internal Revenue Code of 1954.

It appears from the evidence that Fred S. Meyer died on December 9, 1957, at the age of sixty-six years, that his death was caused by a heart attack and that his terminal illness was of three hours duration. At the time of his death he was employed by 20th Century as Studio Director of Personnel in Industrial Relations at a salary of $650.00 per week. He had received this salary for five years prior to his death. Mr. Meyer left two children by a former marriage, both over the age of twenty-one. Plaintiff and decedent were married December 15, 1948, but had no children. Mr. Meyer had been employed by 20th Century since February, 1939.

There was no legal obligation on the part of 20th Century to pay plaintiff or her deceased husband the amount here in issue, or any part thereof.

The court concludes from the evidence that 20th Century had a policy or prac-

tice of making payments to the widows of employees who had served the company well in the more important administrative and executive positions. Such payments were not limited to the widows of deceased employees who had held the more important administrative and executive positions and there were many employees who died in service or in retired status whose widows did not receive payments in any sum.

It appears that from October, 1944, to February, 1961, payments were made in some amounts to widows of some forty employees of varying rank. Of these forty, about thirty-two would be considered as having held positions of medium to high level in the company. The remainder had served the company in a substantial number of years as of the time of their death. [See Deft.'s Ex. D.] The great majority of the payments to widows were made pursuant to action by the Board of Directors although on occasion payments were made on authority of the Executive Committee. No set formula was followed with respect to the amount of the payments made to each widow who received funds from the company.

Mr. Spyros P. Skouras, who was president of 20th Century from 1942 to 1958, stated that payments to widows were usually made on the recommendation of a department head or officer of the company; the Board sometimes increased and sometimes decreased the recommended amount but he knew of no case where such a recommendation had been received by the Board where payment in some amount was not made. He stated further that he had met the plaintiff "a few times", that "It was a policy of the company that we were making certain advances to the widows or to the survivors, particularly if they were children. This policy was instituted by my predecessor and I follow it, and we enlarged it as the corporation progressed" [Skouras deposition, page 4], that the company was guided by the economic condition of the deceased and his survivors as well as length of service, and he felt it was

"just and fair for us to make this payment to the widow of Mr. Fred Meyer." [Deposition, page 9.] Referring to the making of payments to widows or survivors, Mr. Skouras said: "When this plan was instituted, it was at least for no other economic benefit but rather good will benefit to the corporation." On cross-examination, Mr. Skouras stated, at page 14 of his deposition, in answer to an inquiry whether this good will created was considered a benefit to the corporation: " * * * The good will came, but it was not the element that we gave that consideration."

With regard to salary as one of the bases for determining the amount of the payment, Mr. Skouras said: "The salary naturally was used as a guide, because we were not considering sums of money; we were thinking of so many weeks."

■ One of the items considered by some of the courts in passing on the question as to whether payments similar to those involved in the case at bar were gifts, was the corporate set up and ownership of the transferor of the funds. It is common knowledge that 20th Century is a large publicly owned corporation.

On December 28, 1944, Mr. Koegel, the corporation counsel, transmitted, with a letter to the Board of Directors, a memorandum re payments of weekly salary of Sydney Towell, a former vice-president and treasurer of 20th Century, to his widow in the total sum of $75,000. By said memorandum (part of deft.'s Ex. E-1, page 4) counsel advised with respect to the said payments that "(a) they are not to be made pursuant to a contract of doubtful validity but are being made, as much as anything, for the influence they will have on other officers and employees of the Company; (b) they bear a definite relation to Mr. Towell's compensation; (c) they are limited in the time over which they will be paid; and, finally, (d) they constitute tax deductions to the Company, being recognized by the Treasury Department as ordinary and necessary expenses. * * * Since Fox and National will receive benefit from

these payments and the payments are for a lawful purpose, with the big bulk of the expense compensated by tax deduction, it does not seem possible to us such payments could be held to be in waste of the Company's assets or to involve mismanagement of its affairs." [Page 4 of memorandum.]

All payments by 20th Century to widows were reported as "miscellaneous expense" or "studio overhead" and were deducted from corporation income for tax purposes.

There is no evidence that Mrs. Meyer was in financial need or that the members of the Board had any reason to believe or considered the question of financial need on the part of Mrs. Meyer or the surviving children of Mr. Meyer. On the contrary, the evidence shows there was no financial need on the part of the widow or of either of the two children.

Company records evidence that, in the past, some of the letters from the company to widows, notifying them of payments, referred to same as "gratuities" and advised they were tax deductible to the recipient. This is, of course, a point to be considered by the court but not determinative of the issue to be decided. The evidence does not disclose a letter from the company to Mrs. Meyer re the payments here involved.

Considering the criterion for payments, as stated by the Directors at the time of Mr. Meyer's death, whose testimony was introduced by way of deposition, the court concludes that the payment to Mrs. Meyer was based, in chief, on the long time services of Mr. Meyer to the company.

The test to be applied in determining whether payments to widows for deceased employees generally is stated by the District Court in Fröehlinger v. United States, 217 F.Supp. 13 at page 17, as follows:

"As the Supreme Court noted in Commissioner v. Duberstein, 363 U.S. 278, 285 [80 S.Ct. 1190, 4 L. Ed.2d 1218], if the dominant reason for a payment is a 'detached and disinterested generosity' * * * arising 'out of affection, respect, admiration, charity or like impulses' * * *, gift treatment is required. However, if a payment proceeds primarily from 'the constraining force of any moral or legal duty' or from 'the incentive of anticipated benefit' of an economic nature, the payment must be considered as income." [Citing authorities.]

The case of Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218, involved the transfer of a Cadillac car to the taxpayer by a company he had favored with some information and services. At pages 285–288 of its opinion, 80 S.Ct. at pages, 1196–1198, the Supreme Court observes:

"The course of decision here makes it plain that the statute does not use the term 'gift' in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a 'gift' within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730 [49 S.Ct. 499, 504, 73 L.Ed. 918]. And, importantly, if the payment proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41 [58 S.Ct. 61, 65, 82 L.Ed. 32], it is not a gift. And, conversely, '[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.' Robertson v. United States, 343 U.S. 711, 714 [72 S.Ct. 994, 996, 96 L.Ed. 1237]. A gift in the statutory sense, on the

other hand, proceeds from a 'detached and disinterested generosity,' Commissioner v. LoBue, 351 U.S. 243, 246 [76 S.Ct. 800, 803, 100 L.Ed. 1142]; 'out of affection, respect, admiration, charity or like impulses.' Robertson v. United States, supra [343 U.S. at page 714, 72 S.Ct. at page 996]. And in this regard, the most critical consideration, as the Court has agreed in the leading case here, is the transferor's 'intention.' Bogardus v. Commissioner, 302 U.S. 34, 43 [58 S.Ct. 61, 65, 82 L.Ed. 32]. 'What controls is the intention with which payment, however voluntary, has been made.' Id., at 45 [58 S.Ct. at page 66] (dissenting opinion)."

\* \* \* \* \*

"The Government's proposed 'test,' while apparently simple and precise in its formulation, depends frankly on a set of 'principles' or 'presumptions' derived from the decided cases, and concededly subject to various exceptions; and it involves various corollaries, which add to its detail. Were we to promulgate this test as a matter of law, and accept with it its various presuppositions and stated consequences, we would be passing far beyond the requirements of the cases before us, and would be painting on a large canvas with indeed a broad brush. The Government derives its test from such propositions as the following: That payments by an employer to an employee, even though voluntary, ought, by and large, to be taxable; that the concept of a gift is inconsistent with a payment's being a deductible business expense; that a gift involves 'personal' elements; that a business corporation cannot properly make a gift of its assets. The Government admits that there are exceptions and qualifications to these propositions. We think, to the extent they are correct, that these propositions are not princi-

ples of law but rather maxims of experience that the tribunals which have tried the facts of cases in this area have enunciated in explaining their factual determinations. Some of them simply represent truisms: it doubtless is, statistically speaking, the exceptional payment by an employer to an employee that amounts to a gift. Others are overstatements of possible evidentiary inferences relevant to a factual determination on the totality of circumstances in the case: it is doubtless relevant to the over-all inference that the transferor treats a payment as a business deduction, or that the transferor is a corporate entity. But these inferences cannot be stated in absolute terms. Neither factor is a shibboleth. The taxing statute does not make non-deductibility by the transferor a condition on the 'gift' exclusion; nor does it draw any distinction, in terms, between transfers by corporations and individuals, as to the availability of the 'gift' exclusion to the transferee. The conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors.

"Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability, or of the propriety, as a matter of fiduciary or corporate law, attaching to the conduct of someone else. The major corollary to the Government's suggested 'test' is that, as an ordinary matter, a payment by a corporation cannot be a gift, and, more specifically, there can be no such thing as a 'gift' made by a corporation which would allow it to take a deduction for an ordinary and necessary business expense. As we have said, we find no basis for such a conclusion in the statute; \* \* \*."

The critical consideration in the instant case is, of course, the intention

of 20th Century in making the twenty-six weekly payments to Mrs. Meyer.

The court in Tomlinson v. Hine, 329 F.2d 462 (C.A.5, 1964), reversed the District Court's conclusion that the payments to the widow in that case were gifts, stating at page 465 of its opinion:

"No finding of fact was made as to the financial need of Mrs. Hine. The evidence was such as to establish the absence of such need. No finding was made as to whether there was a plan or practice for the making of payments to widows of deceased employees. There can be no doubt but that such a plan and practice existed and had existed for a number of years, although the amounts of such payments were not uniform and were determined by rather intangible standards. It is not necessary that there be any formal statement or declaration of a plan in order for it to exist. * * * The critical and controlling consideration is the intention of the corporation and the basic inquiry is into the dominant reasons that explain the action in making the transfer." [Citing Comm. v. Duberstein, supra.]

▮ The court concludes, after a detailed consideration of the evidence in this case, that the dominant purpose of the Board of Directors in making the payments to Mrs. Meyer was the company's appreciation for the many years (eighteen) of service rendered to it by her husband and without regard to her financial needs. It is reasonable to conclude that the Board also had in mind the general benefit to the company resulting from the influence of such payments on other officers and employees of the company, which was the point most emphasized by the company counsel as the basis for tax deduction of similar payments in his memorandum to the Board of Directors of December 28, 1944. [Part of Deft.'s Ex. E-1.]

The Court of Appeals, 7th Circuit, in Fritzel v. United States, 339 F.2d 995 (1965), reversed a decision of the District Court which had held that the payments to the widow constituted a gift. The Court of Appeals concluded that the dominant purpose in making the payments was to express gratitude for services rendered by the employee without regard to any feelings for or need of his widow. At page 997, the court states:

"It seems apparent to us that the dominant purpose in making the payment to plaintiff was to express gratitude for services rendered by her husband, without regard to any feelings for, or the needs of, his widow. We recognized in Simpson v. United States, 7 Cir., 261 F. 2d 497, 501 (1958), cert. den. 359 U.S. 944, 79 S.Ct. 724, 3 L.Ed.2d 677, that a bonus to a widow qualifies as a gift only where it was intended to help the widow and was 'measured in the light of the needs of the widow'. Subsequently, in Commissioner v. Duberstein, 363 U.S. 278, 285, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the court recognized that, for such a payment to be treated as a gift, it must proceed 'from a "detached and disinterested generosity" '. Conversely, Duberstein is clear in holding that, if the payment is made 'in return for services rendered' or from 'the incentive of anticipated benefit', it is not a gift, although of a voluntary nature. Cases subsequent to Duberstein emphasize that where the dominant purpose in making the payment is to recognize or express gratitude for the service rendered by the deceased without regard to feelings for, or the needs of, the widow, gift treatment is denied."

In the case of Gaugler v. United States, 312 F.2d 681 (C.A. 2 1963), the court affirmed the Judgment of the District Court in favor of the Government on the gift issue stating at page 684:

"In reaching his decision Judge Levet considered a number of clearly relevant factors: (1) the incon-

sistent accounting and tax treatment by the Company; (2) the existence of a previous practice of making similar payments to widows of high officials of the Company; (3) the computation of the payments in terms of the salary which would have been paid had decedent survived and continued his employment; (4) the fact that the payments were made by a business corporation and that sound business reasons were considered in making them; (5) the 'moral duty' implicit in the special circumstances of the widow's need to readjust to a lower standard of living; (6) the Company's failure to investigate the actual financial circumstances and needs of the widow."

There are many cases on the subject here involved but the courts consistently hold that in each case the intent of the transferor is the issue and no rule or standard to be applied is announced. The Supreme Court, in the Duberstein case, supra, expressly refused to apply the "test" there urged by the Government, observing that the

"[d]ecision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts in each case."

Some of the more recent cases, not cited above, holding the payments to the widow of an officer or employee to be income and not gifts are as follows: Spear v. Vinal (D.C.Neb. April 5, 1965) 240 F.Supp. 33; Carson v. United States, 317 F.2d 370 (Court of Claims, 1963); Cronheim's Estate v. Commissioner, 323 F.2d 706 (C.A.8, 1963); Smith v. Commissioner, 305 F.2d 778 (C.A.3, 1962).

The court has carefully examined the cases cited by plaintiff, chief among them being Fanning v. Conley, 243 F. Supp. 683 (D.C.Conn.1965); Estate of Kuntz v. Commissioner, 300 F.2d 849, 95 A.L.R.2d 515 (C.A.6, 1962); United States v. Pixton, 326 F.2d 626 (C.A.5, 1964); Greentree v. United States, 338 F.2d 946 (C.A.4, 1964); and Slater v. Riddell (D.C.So.Cal.1956), 51 AFTR 1677. The examination of these cases leads the court to the conclusion they are to be distinguished from the case at bar with respect to the facts which were considered by the courts in those cases in drawing their conclusions.

In the final analysis, the burden is on the plaintiff in these cases to prove by a preponderance of the evidence that the payments constituted a gift. The court does not conclude that this burden has been carried by plaintiff in the case at bar.

Having in mind the court's findings and conclusions, as stated hereinabove, and considering all the relevant factors bearing upon the issue of gifts, the court concludes that the payments to Mrs. Meyer of $650 per week for twenty-six weeks were not intended by the Board of Directors to be a gift from the company.

There is far from uniform application by the courts throughout the country of what they have indicated are "relevant factors" in the cases cited and referred to above. It appears to this court to be unfortunate that there are not specific rules, guide lines or standards to be applied in the determination of whether payments to surviving widows of an officer or business employee are to be deemed gifts within the tax statute. If the Board of Directors of a company is desirous of making payments to the surviving widow of its employees, or any classification of employees, as gifts within the tax statute, then the advice of counsel should be sought to insure that the factors indicated by the courts as being "relevant" in determining the gift issue are accomplished so as to clearly evidence the intent of the Directors to effect a gift within the meaning of Section 102(a) of the Internal Revenue Code of 1954.

Counsel for the defendant is requested to prepare, serve and lodge Findings

of Fact, Conclusions of Law and Judgment in accordance with Rule 7 of Local Rules, West's Ann.Code.

This memorandum is not to be deemed a final judgment.