MARGARET L. SWEENEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sweeney v. Commissioner
Docket No. 26141-86.
United States Tax Court
T.C. Memo 1987-550; 1987 Tax Ct. Memo LEXIS 542; 54 T.C.M. (CCH) 1003; T.C.M. (RIA) 87550; October 28, 1987. Thomas F. Sweeney, for the petitioner. Roberta M. Hamm, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 4,672 in petitioner's Federal income tax for 1983. The only issue for decision is whether monthly payments to petitioner from the National Bank of Detroit in the *543 total amount of $ 1,919.76 constitute gross income pursuant to section 61. [1]
FINDINGS OF FACT Petitioner Margaret L. Sweeney was a resident of Birmingham, Michigan, at the time she filed her petition. Prior to his death, petitioner's husband, Paul M. Sweeney, was employed by the National Bank of Detroit (hereinafter the bank), the largest bank in Michigan. The bank itself has approximately 6,500 employees and, taking into account its affiliates, the employees number approximately 13,000. In 1974, petitioner's husband, at the age of 49, suddenly died. Mr. Sweeney was a vice-president of the bank and had been an employee for more than 20 years. The organizational structure of the bank, however, is such that it has numerous officers and Mr. Sweeney's position was not unique. In 1974, the bank's retirement plan provided for a survivor's benefit only if the employee died in active service after attaining the retirement age of 55. In determining the amount of such payments whether retirement or survivor's benefits, the bank used a formula which factored in the amount *544 of the employee's salary, the length of his service, his age at retirement or death, and the age of the beneficiary. At the time of his death, Mr. Sweeney had not yet reached age 55. Therefore, under the bank's retirement plan, neither Mr. Sweeney's estate nor petitioner was entitled to any benefits other than the refund of the contributions he had made to the plan, plus interest. In 1974, the bank was in the process of developing certain recommendations for changes in its retirement plan and expected to implement the changes in 1975. Once amended, the plan would provide income replacement to the families of all deceased employees. In 1974, several employees of the bank died in situations similar to that of Mr. Sweeney. Because the new amendments to the retirement plan were not yet in effect, the bank decided to make death benefit payments to the families of deceased employees, including petitioner, even though such payments were not called for under the plan as it existed in 1974. The same criteria was used in computing the amounts of the payments in all such cases. The amount of the monthly payment to petitioner as a survivor of a deceased employee in 1974 was based upon *545 the amount that would have been payable as a survivor benefit had Mr. Sweeney been vested in the retirement plan and 55 years of age. Because Mr. Sweeney had not reached retirement age, the amount of the monthly death benefit was adjusted to reflect his age. The payments to petitioner and other employees' survivors were not made from the funds of the retirement plan but were paid from the general assets of the bank. The bank had not made such payments before 1974, but under the practice adopted for 1974 would have paid benefits to the survivor of any employee in a situation similar to that of Mr. Sweeney. In March 1974, pursuant to the decision to provide death benefits for employees not qualified under the bank's retirement plan, the bank began making monthly payments in the amount of $ 159.98 to petitioner as Mr. Sweeney's widow. The bank made these monthly payments to petitioner during 1983 and will continue until she dies or remarries. Petitioner has never worked at the bank. Petitioner disclosed these payments on her husband's estate tax return, stating that the payments were voluntary, not required to be made under the terms of decedent's employment and were, therefore, *546 not includable in his estate. The Internal Revenue Service (IRS) accepted this return as filed. Every year since her husband's death, petitioner has reported these voluntary payments on her income tax return but has excluded them as a gift under section 102. The Commissioner did not challenge this treatment of the payments for the years 1974 through 1982. For 1983, the Commissioner determined that the payments of $ 1,919.76 to petitioner were taxable income. OPINION Where a surviving spouse receives payments from the former employer of his or her deceased spouse, such payments may be gross income under section 61 or they may be excluded from gross income as gifts under section 102(a) depending on the facts of the case. In Commissioner v. Duberstein,363 U.S. 278 (1960), the Supreme Court held that a voluntary transfer of property to an employee without consideration, though a common-law gift, is not necessarily a "gift" within the meaning of the section 102(c). The mere absence of a legal or moral obligation to make such a payment does not establish that it is *547 a gift. Commissioner v. Duberstein, supra at 285; Old Colony Trust Co. v. Commissioner,279 U.S. 716, 730 (1929). To be a gift in the statutory sense, the transfer of property from one to another without consideration must proceed from a "detached and disinterested generosity," Commissioner v. LoBue,351 U.S. 243, 246 (1956); "out of affection, respect, admiration, charity or like impulses." Robertson v. United States,343 U.S. 711, 714 (1952). The Court, in Commissioner v. Duberstein, stated (supra at 285) that the most critical consideration is the "transferor's 'intention'" and added (at 286): We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact -- the dominant reason that explains his action in making the transfer. Further than that we do not think it profitable to go.
The issue is "basically one of fact, for determination on a case-by-case basis." Commissioner v. Duberstein, supra at 290. Accordingly, in determining whether to treat the bank's payments to petitioner as taxable income or *548 as a nontaxable gift, we must seek to ascertain, in the light of the evidence before us, the bank's intention in making these payments. In the light of that evidence, we hold that the bank, with its thousands of employees, do not make a gift to petitioner but made payments which constitute gross income to her. In order to qualify for retirement or death benefits under the bank's retirement plan as it existed in 1974, an employee had not only to have worked at the bank for 20 years but must have also reached the age of 55. Kenneth Kleiman (Kleiman), an officer at the bank, testified that in 1974 the plan did not have vesting; if an employee died in service prior to early retirement age, the only benefit that was payable out of the plan was the return of the employee's own contributions. At his death, Mr. Sweeney had not qualified for death benefit payments under the existing plan. In 1974, as detailed in our findings, the bank was in the process of developing recommendations for changes in its retirement plan which it expected to implement in 1975. Kleiman testified that, after the bank amended the plan, it provided for income replacement to families where a bank employee *549 died with less than 20 years of service and before reaching age 55. In 1974 several bank employees died in circumstances similar to that of Mr. Sweeney. Because the new plan provisions were not yet in effect, the bank decided to treat all deceased employees as if the plan had already been changed and provide support to their families outside of the 1974 retirement plan. This was a policy decision by the bank and was not limited to any one group of employees. The bank thus did not make the payments to petitioner out of detached generosity and affection for Mr. Sweeney but as a matter of bank practice applicable in 1974 to all employees in similar circumstances. Where an employer, particularly one, like the bank, with a large number of employees, adopts a generally applicable practice to provide for the widows of deceased employees for a period after the employees' deaths, the payments have been held to be gross income under section 61 and not gifts in the sense of section 102(a), even though the widow has no enforceable legal right to the payments. The courts have reasoned that the employer *550 has a moral obligation to apply the general policy to all similar cases and that the employer benefits from such a policy through better relations with its employees. Smith v. Commissioner,305 F.2d 778, 781-782 (3d Cir. 1962), affg. a Memorandum Opinion of this Court; Simpson v. United States,261 F.2d 497, 500-501 (7th Cir. 1958); Bausch's Estate v. Commissioner,186 F.2d 313, 314 (2d Cir. 1951), affg. 14 T.C. 1433 (1950); Gaugler v. United States,204 F.Supp. 493, 505 (S.D. N.Y. 1962), affd. 312 F.2d 681 (2d Cir. 1963) "anticipation of economic benefits as well as the compelling force of a moral duty"); see also Carson v. United States,161 Ct. Cl. 548, 555, 317 F.2d 370, 374 (1963). [2]
*551 Other related factors reinforce our conclusion that the payments to petitioner were not a gift. In determining the amount of payment the bank applied the same formula used under its retirement plan, arriving at the precise figure of $ 159.98 per month. As stated in our findings, this formula took into consideration an employee's salary, length of service, age at time of retirement or death, and the age of the beneficiary. Hence, even though these payments did not come out of the retirement plan funds, the amounts of the payments were computed under a formula similar to that used for the retirement plan; the plan itself was compensatory in nature and, in our view, so were the payments to petitioner. See Smith v. Commissioner,305 F.2d at 781-782. Further, the bank did not consider petitioner's financial needs in deciding whether to make the payments and the amount to be paid to her. Simpson v. United States,261 F.2d at 501; Smith v. Commissioner,305 F.2d at 782; Gaugler v. United States,204 F.Supp. at 503. In fact, the estate tax return for Mr. Sweeney's estate shows that he left petitioner a sizeable *552 estate and petitioner's income tax return for 1983 discloses substantial income from a variety of sources. [3]
Petitioner contends that upon Mr. Sweeney's sudden death the bank felt compelled out of sympathy and compassion to provide petitioner support until she might remarry or die whichever occurred sooner. Petitioner states that the payments were made to her and not to her husband's estate and argues that the bank had no legal obligation to petitioner, that decedent had been fully compensated, and that the bank had no policy of this kind prior to Mr. Sweeney's death. We have pointed out, however, that the bank adopted and followed a practice in 1974 of providing death benefits for the families of employees who died *553 in that year, prior to the effective date of the revision of the bank's retirement plan. Having adopted that plan, the bank had no justification, in the light of the record before us, for denying those benefits to petitioner. Had the bank failed to treat Mr. Sweeney's widow, petitioner, the same way in this respect as it treated others similarly situated in 1974, the bank's "integrity in the eyes" of other employees would have been suspect. Simpson v. United States,261 F.2d at 501. The fact that petitioner may have been the first of several beneficiaries of this 1974 policy does not render the payments a gift. Even though Mr. Sweeney may have been fairly compensated during his lifetime, the bank in adopting the 1974 death benefits policy may have concluded that the practice would benefit the bank by "encouraging living executives to continue in their employment" by the bank. Simpson v. United States,261 F.2d at 500. Petitioner relies upon Kuntz' Estate v. Commissioner,300 F.2d 849 (6th Cir. 1962), revg. a Memorandum Opinion of this Court. In Kuntz' Estate, the court found that payments for 2 years to a widow of a company *554 president to be a gift. The Sixth Circuit found that the Tax Court erred and committed a mistake in its finding and conclusion that compensation was the dominant reason for the transfer rather than sympathy, generosity, and kindness to the widow of an officer and an employee of 42 years who had devoted all of his entire working life to the prosperity of the company. We distinguish petitioner's case from Kuntz' Estate case. Here, the bank, with a modification for age, structured the payments to petitioner and all other families of deceased employees as if they were covered by the bank's retirement plan. The bank made these payments because, in 1974, the bank was in the middle of implementing changes to its retirement plan which would provide income replacement to the families of all deceased employees. The facts in Kuntz' Estate are totally different. In Kuntz' Estate the board made payments to the widow of the company president out of a true affection, respect, and admiration for this past company president who had given 42 years of faithful service. The board would not have done this for every widow of a deceased employee as was done in petitioner's case. Hence, *555 the Kuntz' Estate case is distinguished from petitioner's case. To reflect the disposition of other issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. In Simpson v. United States,261 F.2d 497, 501 (7th Cir. 1958), the court stated with respect to payments made to the widows of executives under a plan established by a resolution adopted in 1950: While the resolution of 1950 attempted to protect the company from any legal obligations to make payments, it clearly imposed a moral obligation. As a practical matter, the company had to pay taxpayer in order to preserve its integrity in the eyes of the other executives whose wives were to receive similar payments in the future, and it never in fact tried to revoke the resolution or refused to make payments under it. In any event, legal obligation to pay is not necessary to characterize a payment as compensatory. Old Colony Trust Co. v. Commissioner,279 U.S. 716, 730, 49 S.Ct. 499, 73 L.Ed. 918. The important consideration is that the payment was made in pursuance of an established plan, which was just as effective as an incentive to induce executives to remain with the company as any legal undertaking on the part of the company to make such payments. Bausch's Estate v. Commissioner, supra.↩
3. The bank employee witness in the instant case testified that he did not know whether the bank has deducted the death benefit payments made to petitioner and other survivors of employees who died in 1974. Thus, the record contains no evidence on a factor considered relevant by several courts in deciding the issue here presented. Commissioner v. Duberstein,363 U.S. 278, 287 (1960); Simpson v. United States, supra↩ at 501.