Laurie W. TOMLINSON, Individually and as United States District Director of Internal Revenue for the Internal Revenue District of Florida, Appellant,

v.

Annabel B. HINE et al., Appellees.

No. 20615.

United States Court of Appeals Fifth Circuit.

March 20, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div., Dept. of Justice, Washington, D. C., Edith House, Asst. U. S. Atty., William Hamilton, Jr., Asst. U. S. Atty., Miami, Fla., Giora Ben-Horin, Meyer Rothwacks, Attys., Tax Div., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., of counsel, for appellant.

W. Davis Parker, Sarasota, Fla., James J. Cloran, Philadelphia, Pa., Williams, Parker, Harrison & Dietz, Sarasota, Fla., Drinker, Biddle & Reath, Philadelphia, Pa., of counsel, for appellees.

Before TUTTLE, Chief Judge, and PHILLIPS * and JONES, Circuit Judges.

JONES, Circuit Judge.

Annabel B. Hine, a resident of Sarasota County, Florida, is the surviving spouse and sole legatee and devisee under the will of Walter R. Hine, who died testate on September 23, 1954. Walter R. Hine was an employee of the J. Walter Thompson Company for some twenty-five years prior to his death. J. Walter Thompson Company is an advertising agency. At the time of his death he was semi-retired and receiving an annual salary from the corporation of $15,000 for the use of his services as required. At his death, the corporation was not indebted to Hine except to the extent of a partial salary payment which is not here in dispute. The taxpayer has never been an employee of the corporation, and has rendered no services to the company. At his death, Hine owned 250 of the 300,000 shares of outstanding stock of the corporation, which were purchased by the

* Of the Tenth Circuit, sitting by designation.

corporation in 1955. Mrs. Hine, in 1955, received from the company $65,734.00 in payment of her husband's interest in the company's profit-sharing trust plan. Shortly after Hine's death, the corporation authorized a payment of $10,000 to the taxpayer-widow which was received by her in December, 1954. This payment was recorded on the corporate books in an account labeled "Voluntary Payments to Widows of Deceased Employees" and was deducted by the company on its 1954 income tax return.

The Internal Revenue Service included the payment as taxable income to Mrs. Hine on which she paid the tax. She filed a claim for refund and, upon it being disallowed, brought suit.

To support its tax deduction of the amount paid to Mrs. Hine, the company transmitted to the Internal Revenue Service a memorandum entitled "Voluntary Payments to Families of Deceased Employees." In the memorandum it was recited:

"This Company depends for its success upon the services of the members of its staff. These services call for a high order of creativity made possible to a very considerable extent by the atmosphere in which these persons work, particularly the members of the organization carrying senior responsibility. Just as individualistic contributions in services are essential to the development and creation of successful advertising, so, too, is an individual approach essential in considering the financial aspects of each key member of the J. Walter Thompson Company organization. We consider many factors and vary the weight given each factor as the situation seems to indicate for each individual. In no case is this reducible to a mathematical formula. It is determined by judgment.

"Among the factors taken into consideration in determining the total provision to a widow of a deceased employee are: duration of employment; age of the employee at the time of death; compensation received by the deceased, including extent of participation in the Profit-Sharing Trust; his contribution to Company; his standing in the industry; how his compensation while living compared with our knowledge of what persons of similar stature received in other companies; and amounts of payments to other widows and the circumstances surrounding such payments.

"All such decisions for voluntary payments to widows of deceased employees have been made after the death of the employee."

The testimony of two officers of the Company was taken by deposition. One of these officers was Edward G. Wilson, a vice president, the treasurer, a director, and a former general counsel of the Company. He testified that he was familiar with the practice of making payments to the widows of employees carrying senior responsibility. In most cases, if not all, he said, the Company had made such payments. He stated that the making of payments to widows was beneficial to the Company, served a business purpose and helped client relations. He thought Hine knew of the payments to some widows and that this knowledge would have been a "boost to Mr. Hine's morale."

Howard Kohl, Secretary of the Company, also testified. Although saying there was no plan, he thought it fair to say that payments were made in many situations though he couldn't be sure it was done 100 per cent. Many factors, Kohl attested, such as age, length of service, the condition of the widow, the employee's standing in the Company, and the industry, and probably other factors, were considered in determining the amount. He said, and this is clearly apparent, that the Company had a practice over a number of years of making payments to widows of employees in amounts which were based upon the various factors considered. The amount was determined after the employee's

death. He did not know whether Hine knew of the practice of making payments to widows. He gave a conclusory affirmative answer to the question as to whether he regarded the payment to Mrs. Hine as a gift. He thought the payments did not serve a business need or function of the Company but, with understandable inconsistency, said that it was an ordinary and necessary expense.

The district court made findings of fact which, so far as material to the issue before us, are as follows:

"The payment by J. Walter Thompson Company to Plaintiff was not intended to be additional compensation for any services rendered to it by Walter R. Hine.

"The payment by J. Walter Thompson Company to Plaintiff was not made pursuant to any obligation of any kind or nature, express, implied, legal or moral, owed by the Company to Walter R. Hine, to his estate, or to Plaintiff, and no consideration was given for or on account of this payment.

"The J. Walter Thompson Company did not derive any benefit from the $10,000.00 payment to Plaintiff.

"The payment made by J. Walter Thompson Company to Plaintiff was intended as a benevolent act and was made as an expression of sympathy to Plaintiff.

"J. Walter Thompson Company intended to make a gift of the $10,000.00 to Plaintiff."

As a conclusion of law the court determined that the $10,000 payment to Mrs. Hine was and was intended to be a gift and wholly excludable from gross income under Section 102 of the Internal Revenue Code.

No finding of fact was made as to the financial need of Mrs. Hine. The evidence was such as to establish the absence of such need. No finding was made as to whether there was a plan or practice for the making of payments to widows of deceased employees. There can be no doubt but that such a plan and practice existed and had existed for a number of years, although the amounts of such payments were not uniform and were determined by rather intangible standards. It is not necessary that there be any formal statement or declaration of a plan in order for it to exist. The text from which we start and to which we return in cases of this kind is Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218. There we learn that "Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218. And, it is said "that primary weight in this area must be given to the conclusions of the trier of fact." 363 U.S. 278, 289, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218. In lesser language this Court had previously said: "The question of whether the corporate payment * * * is a gift or something else is a question of fact to be determined in each case." Ginsberg's Estate v. Commissioner, 5th Cir. 1959, 271 F.2d 511, 513. The critical and controlling consideration is the intention of the corporation and the basic inquiry is into the dominant reasons that explain the action in making the transfer. Commissioner v. Duberstein, 363 U.S. 278, 285, 286, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

■■ The finding that the payment to Mrs. Hine was not intended by the Company as compensation for services rendered by her husband is not a factor that weighs heavily. It is more important to consider whether the Company regarded the payment as serving a business purpose and being economically beneficial to it. Simpson v. United States, 7th Cir. 1958, 261 F.2d 497, cert. den. 359 U.S. 944, 79 S.Ct. 724, 3 L.Ed. 2d 677. Commissioner v. Duberstein, 363 U.S. 278, 285, 80 S.Ct. 1190, 4 L.Ed. 2d 1218. So too we think it is of little importance that, as the trial court found,

there was any legal or moral obligation to make the payment. If there was an obligation, and the payment had been made in discharge of it, then, clearly, there would have been no gift. But the absence of the obligation does not make an affirmative showing that there was a gift. Simpson v. United States, supra; Bausch's Estate v. Commissioner, 2nd Cir. 1951, 186 F.2d 313; Commissioner v. Duberstein, 363 U.S. 278, 285, 80 S.Ct. 1190, 4 L.Ed.2d 1218. And, query, can there be no moral obligation where the payment was made pursuant to a plan and practice, particularly if the existence of the plan and practice was known to the employee? The testimony, heretofore referred to, shows that the Company made the payment for a business purpose and with the expectation of an economic benefit. The district court's finding to the contrary is, we think, clearly erroneous.

We find but slight, if any, contribution to a solution of the problem in the finding of the district court that the payment was intended as a benevolent act and intended as an expression of sympathy. The most that can be said for the finding that the payment was a benevolent act is that it was motivated by a desire to do good. Benevolent has been construed as synonymous with charitable and, on the other hand, has been distinguished from charitable. See 5 Words and Phrases, 348 et seq. Sympathy is a sharing of sorrow or a feeling of compassion. It is not something that is generally thought of as being expressed by the payment of money.

The last of the trial court's findings of fact and its finding of the ultimate fact is that the Company intended to make a gift to Mrs. Hine. This finding, which has the attributes of a conclusion, can remain undisturbed only if it appears that there has been an objective inquiry which permits such a result. Cf. Commissioner v. Duberstein, 363 U.S. 278, 286, 80 S.Ct. 1190, 4 L.Ed.2d 1218. To sustain the payment as a gift—as an act of benevolence—the needs of the widow would be considered. Poyner v. Commissioner, 4th Cir. 1962, 301 F.2d 287; Simpson v. United States, supra. It does not appear that her needs were considered by the Company in fixing the amount of the payment. The existence of a plan or practice is most persuasive against the theory that a payment is a gift, and, we think it is decisive where a benefit to the Company is expected. Estate of Cronheim v. Commissioner, 8th Cir. 1963, 323 F.2d 706; Bounds v. United States, 4th Cir. 1958, 262 F.2d 876; Simpson v. United States, supra.

In Duberstein, the Supreme Court, after stating that the primary weight in this area must be given to the conclusions of the trier of fact, pointed out that appellate review is quite restricted, and the only inquiry in a judge-tried case is whether the findings are clearly erroneous, noting that a finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. 363 U.S. 278, 289–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218. We are firmly convinced that a mistake has been committed and that the judgment must be reversed. If we believed that there might be varying motives which prompted the making of the payment, one or more of which would fall into the opposite side of the balance from the other or others, or if we believed that different inferences might properly be drawn with respect to the pertinent criteria on which no findings were made, we would remand to the district court for its further consideration and for further findings. But, being firmly convinced that the totality of the relevant factual elements requires a decision for the Government we conclude that our remand should be only for the purpose of entering judgment for the United States on the issues submitted by the appeal. So that this may be done, the judgment is

Reversed and remanded.