Edith L. Joyce v. Commissioner.
Joyce v. Commissioner
Docket No. 5617-64.
United States Tax Court
T.C. Memo 1966-175; 1966 Tax Ct. Memo LEXIS 109; 25 T.C.M. (CCH) 914; T.C.M. (RIA) 66175; July 25, 1966
Donald L. Alderton, for the petitioner. Merritt S. Yoelin, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined a deficiency in petitioner's income tax for the year 1961 in the amount of $136.34. The only issue for decision is whether the sum of $1,189.20 received by petitioner, Edith L. Joyce, representing widow's benefits from the sustentation fund of the General Conference of Seventh-Day Adventists is includable in her gross income. Findings of Fact Some *110 of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Edith L. Joyce, a petitioner, a resident of Portland, Oregon, filed a joint income tax return with her deceased husband, Charles S. Joyce (hereinafter referred to as Charles) for the taxable year 1961 with the district director of internal revenue for the district of Oregon. Petitioner had previously been married to Arthur Beazley, a minister of the Seventh-Day Adventists. Beazley had been active in the ministry from 1918 until his retirement in 1947. Upon retirement he received monthly payments from the sustentation fund of the General Conference of Seventh-Day Adventists. The fund had been established in 1911 and has been making payments to retired employees and/or their beneficiaries since that time. The plan encompasses all employees of the Seventh-Day Adventist Church in whatever capacity they are employed and is designed to provide security for those employees who have devoted their lives to Church service. The existence of the plan is generally known to the Church employees and at least in the case of nonministerial employees *111 produces a benefit to the employer. Such benefit arises in the additional motivation of an employee to accept employment in the Church. The plan is noncontributory and is sustained by payments from the total Church organization. Benefits are based upon the length of service of the employee and the receipt of said benefits is conditioned on the continued loyalty of the employee to the Church. Benefits to the widow of a deceased employee are computed in the same manner but are limited to three-quarters of the payment received by the deceased spouse. The receipt of such payments by the widow is dependent on maintenance by her of her status as a widow; her continued loyalty to the Church; and, if she is under 65 years of age, her financial condition and ability for self-support. It is also understood that all individuals receiving sustentation shall pay a faithful tithe to the Church. Beazley continued to receive payments from the fund from the date of his retirement in 1947 until his death in 1954. Upon his death and without application by petitioner, she continued to receive moneys from the fund amounting to three-fourths of the monthly retirement payments made to Beazley. These payments *112 continued until August 6, 1961, when petitioner married Charles, at which time the payments were terminated pursuant to the regulations governing the fund. In December of 1961, after the death of Charles, and again without the necessity of an application being filed by petitioner, the payments to her were resumed. Such payments were, as were the prior payments, based upon her status as the widow of Beazley. During 1961, the taxable year in question, petitioner received payments from the fund aggregating $1,189.20. With reference to these payments, petitioner received a Form 1099 from the General Conference for the year 1961, which characterized the payment as "other income." It is the usual practice of the General Conference to withhold income tax from payments to a retired employee or his widow if the payments exceed the amounts claimed for exemptions and dependents of the recipient. The Conference's reason for making such payments of "other income" was that the Church felt morally obligated to make them in order to assist those who have devoted their lives to the service of the Church. No part of the $1,189.20 received by petitioner was reported on, nor was the Form 1099 attached *113 to, the joint income tax return filed by petitioner and her deceased husband, Charles, for the year 1961. The petitioner did, however, include a notice stating that she had received the payments but contending that such payments were not taxable. Respondent in his statutory notice of deficiency determined that the payments from the sustentation fund were taxable as ordinary income and should have been included in petitioner's gross income. Opinion The sole issue for determination is the characterization of the payments, representing widow's benefits, received by petitioner from the sustentation fund of the General Conference. Petitioner maintains that the payments were gifts and as such are excludable from gross income under section 102(a) of the Internal Revenue Code of 1954. [1] Respondent, on the other hand, contends that the benefit payments are gross income within the scope of section 61(a). [2]
*114 We agree with respondent. The determination of the nature of the payments as gifts or as taxable income is basically a question of fact. Smith v. Commissioner, 305 F. 2d 778 (C.A. 3, 1962), affirming a Memorandum Opinion of this Court, certiorari denied 371 U.S. 904 (1962). Under the rationale of the Supreme Court's decision in Commissioner v. Duberstein, 363 U.S. 278, 286 (1960), the ultimate criterion is stated in terms of an inquiry into the basic or dominant reason that explains the action of the transferor. Case law, both prior and subsequent to the Duberstein opinion, suggests a number of factors to be considered in determining the intention of the transferor. To constitute a gift within the meaning of the tax statute, the benefits paid must proceed from a "detached and disinterested generosity," Bogardus v. Commissioner, 302 U.S. 34, 43 (1937); or "out of affection, respect, admiration, charity or like impulses," Robertson v. United States, 343 U.S. 711, 714 (1952). The absence of a legal or moral obligation to make such payments, Old Colony Tr. Co. v. Commissioner, 279 U.S. 716, 730 (1929), *115 or the fact that payments are voluntary, Tomlinson v. Hine, 329 F. 2d 462 (C.A. 5, 1964), do not per se establish that a gift was intended. However, payments which do proceed from a legal or moral obligation are not gifts. Bogardus v. Commissioner, supra. Additional factors, which militate against a determination that gifts were intended, have been findings: (1) that a plan or past practice of payment was in existence, Cronheim's Estate v. Commissioner, 323 F. 2d 706 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court; Simpson v. United States, 261 F. 2d 497 (C.A. 7, 1958), certiorari denied 359 U.S. 944 (1959); (2) that the needs of the widow were neither the prerequisite for, nor the measure of payment, Cronheim's Estate v. Commissioner, supra; and (3) that the transferor considered the payment as compensation, including the withholding of income tax, Gaugler v. United States, 312 F. 2d 681 (C.A. 2, 1963); Margaret H. D. Penick, 37 T.C. 999 (1962). However, in determining that certain payments constituted gifts, courts have seized upon the following: that payments *116 were made directly to the widow rather than to the estate; that the widow performed no services for the transferor; that full compensation had been paid for the services of the deceased husband; and that the transferor derived no benefit from the payment. Estate of Arthur W. Hellstrom, 24 T.C. 916 (1955); see also Florence S. Luntz, 29 T.C. 647 (1958). The determination of the transferor's dominant motive does not rest upon any single factor but is rather a conclusion reached after due consideration of all the relevant factors. On the facts of this case, in light of the aforementioned legal principles, it is the opinion of this Court that the payments were not gifts. The widow's benefits paid to petitioner were pursuant to a plan which had been in existence for fifty years. The plan encompasses all employees of the Seventh-Day Adventist Church and is financed by a percentage levy on all Church organizations. It provides for identical treatment of all employees whether they are ministers of the gospel or are employed in another of the Church's varied undertakings. The benefits payable to a worker, and similarly those paid to his widow, are fixed according *117 to a computation based upon the length of service by the employee to the Church. Consideration is also given to the degree of major responsibility borne by the worker. In many respects, therefore, the Church's plan, though voluntary, is the equivalent of a retirement plan. The record reveals that employees are generally made aware of the existence of the fund and that, in this respect, the Church benefits from the plan in that it provides an additional inducement for workers to enter the Church's employ. Petitioner strongly urges that the concept of economic benefit to the Church is without application in the case of those employed as ministers. In this context she seeks to differentiate her case on the basis of the nature of her husband's ministerial employment. As the Court has noted earlier, the plan makes no distinction. We are of the opinion, therefore, that regardless of the motive of an individual employee or class of employees, the motive of the Church, as transferor, must be gleaned from the plan as administered by the Church. Under these circumstances we refer to language of the Fifth Circuit in the case of Tomlinson v. Hine, supra, at 466, which stated: *118 The existence of a plan or practice is most persuasive against the theory that a payment is a gift, and, we think it is decisive where a benefit to the Company is expected. * * * However, we do not rest our decision solely upon this ground. In addition, petitioner has not shown that the payments made to her were in response to her financial condition. On the contrary, the record shows that at the death of Beazley and again at the death of Charles, no application for benefits was required of petitioner, nor is an application generally required in such circumstances. Therefore, payments from the plan were made to petitioner without any inquiry into her financial condition being made by the Church. In addition, the measure of the payments is based on a computation which ignores financial condition, in that benefits are computed solely on the basis of length of service and the degree of major responsibility borne by the employee. This lack of consideration of petitioner's financial status is a highly relevant factor in determining that the motive of the transferor was not to make a gift to petitioner. Cronheim's Estate v. Commissioner, supra.Our conclusion is further *119 strengthened by the additional factor that the Church itself treated the payments as "other income" and made it a practice to withhold income tax on the payments to the extent that the payments exceed the amount of exemptions and dependents of the recipient. This factor, though not decisive, is, again, highly relevant to the determination that no gift was intended. Gaugler v. United States, supra.
Finally, the testimony shows that the Church recognized a moral obligation to make such payments to those employees, and their widows, who have loyally rendered service to the Church. This fact alone has been held sufficient to prevent payments from constituting gifts. Commissioner v. Duberstein, supra, at 285. The Court is aware, as petitioner points out, that the payments were made directly to her and that she did not perform any services for the payor. Nor was she interested in the payor through stockholdings. However, petitioner has not met the burden of demonstrating that such payments were intended as gifts. On the contrary, there is affirmative evidence that the payments were not so motivated. Therefore, on consideration of all the relevant factors in *120 this case, we are of the opinion that, under the established legal guidelines, the payments to petitioner were not gifts as that term is used in section 102(a). Decision will be entered for the respondent. Footnotes
1. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule. - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance. ↩
2. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *↩