**Elizabeth W. CARPER, Widow, Plaintiff,**

v.

**J. E. WALL, District Director of Internal Revenue, Defendant.**

**Civ. A. No. 2214.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Oct. 19, 1968.

Phillip V. Harrell, Mullen, Holland & Harrell, Gastonia, N. C., for plaintiff.

Daniel L. Penner, Atty., Dept. of Justice, Washington, D. C., William Medford, U. S. Atty., Asheville, N. C., and Joseph R. Cruciani, Asst. U. S. Atty., Charlotte, N. C., for defendant.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

This case was tried in Charlotte before a jury and was decided for the defendant upon his motion for a directed verdict.

Elizabeth W. Carper of Gastonia, North Carolina received the sum of $25,000 in $5,000 installments in 1959, 1960 and 1961 from Public Service Corporation of North Carolina, employer of her late husband, Ashby T. Carper. The Director of Internal Revenue excluded the first $5,000 under 26 U.S.C.A. § 101 and sought to tax the remaining $20,000 as ordinary income. Mrs. Carper paid $5,949.07 tax under protest in 1965 and in 1967 sued to get it back, with interest,

claiming the $20,000 was a gift. This Court agrees with the tax collector.

Ashby T. Carper worked for Public Service Company of North Carolina, Inc. from about 1936 until his death in 1959. The company dealt in manufactured gas. Its 1,500,000 shares of stock are widely held. No one and no family has voting control. In 1952 the industry was in the doldrums. Trained and experienced men were then (as now) hard to get and keep. The corporate directors, in order to retain Carper and several other "invaluable" employees, whose salaries were low and who were subject to "outside attractions," took out $25,000 life insurance policies, payable to the corporation, to provide funds for payments to the survivors upon the death of the named key employees. The minutes of the 1952 Board of Directors meeting, as a preamble to this action, recited that the continued association of Ashby T. Carper, Vice-President, and two others, was

> " * * * urgently desired due to their association and intimate technical knowledge of the Gas Business, their personal contacts, managerial ability, and reputation in the industry * * * "

Each of the "invaluable" men was informed of the action and the plan, and was told, by letter and otherwise, that if he remained in good standing until his death the sum of $25,000 would be paid to his estate. All these men were good personal friends.

One Howard Richmond, another executive, was brought under the plan, but left the company after four years' service, and before Carper's death. When he left the insurance on his life was cancelled.

Nothing else was written about the subject before Carper's death. The corporation paid the premiums on the policy. Carper died, in good standing as Vice-President and Chief Engineer, on September 11, 1959. The corporation collected the insurance proceeds.

On November 16, 1959, without formal Board action, $5,000 was paid to Mrs. Carper. Thereafter, however, the Board of Directors took steps to characterize the transaction as a gift. At a Board meeting on February 10, 1960, the minutes show that a resolution was adopted authorizing payment of $25,000 to Elizabeth W. Carper:

> " * * * as a material expression of sympathy and of kindness to Elizabeth W. Carper, widow of Ashby T. Carper, who was Vice President and Chief Engineer of this Corporation at the time of his death, and motivated by a deep sense of appreciation and in recognition of the past faithful service of Ashby T. Carper as Vice President and Chief Engineer of this Corporation * * * "

No inquiry was made at any time as to Mrs. Carper's financial condition or need. Appropriate checks were prepared paying the remaining $20,000 in four installments in 1960 and 1961 and the check stubs described the payments as a:

> " * * * gift of appreciation of the faithful services of her deceased husband, Ashby T. Carper."

These payments were deducted by the corporation as ordinary business expense for income tax purposes. No one declared them as gifts.

Branson E. Zeigler and W. Clyde Rodgers, themselves directors and stockholders and members of the same plan, testified that they considered the payments to Mrs. Carper to be in discharge of a moral obligation to her. In fact, Mr. Zeigler at one point suggested that one of the reasons for the payment was to compensate wives of key executives for unpaid services rendered by the wives in support and in furtherance of the corporation's business!

In numerous places in the testimony the witnesses Zeigler and Rodgers referred to these payments as "gifts"; and the notations placed on the checks paying the $20,000 also used the word "gift." There was testimony that the purpose of the payments was to benefit the families of deceased employees and to enable them to continue living for a time at previous

subsistence levels. However, this sort of language did not appear until after Carper's death and after it came time to reckon with 1959 and 1960 income taxes. Before that time the entire transaction had fitted a completely consistent pattern and plan to make the corporation attractive to key employees, to meet competition for their services, and to promote continued and lengthy service by "invaluable" individuals.

The Court is of the opinion that the labels used by directors and witnesses after the plan had "jelled" should not defeat the obvious and dominant business purposes of the transaction, and that within the meaning of 26 U.S.C.A. § 102 the money paid to Mrs. Carper was taxable income.

Decisions in support of this view are: Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Simpson v. United States, 261 F.2d 497, 500–501 (7th Cir. 1958); Bounds v. United States, 262 F.2d 876 (4th Cir. 1958) (The existence of a plan militates against the "gift" theory.); Tomlinson v. Hine, 329 F.2d 462, 466 (5th Cir. 1964). (This opinion points out that the existence of a plan and the failure to investigate the widow's needs argue strongly against a gift and that the existence of a plan is "decisive where a benefit to the Company is expected." The Court observes that where the "totality of the relevant factual elements requires a decision for the Government (in other words, if it is wrong to reach a contrary result), the government ought to win.")

Ten days before trial the defendant served a motion for summary judgment. The motion was denied upon the theory that too few working days (over Labor Day week) were available in that period really to hold plaintiff to the mark on filing counter-affidavits, and that the effective way to dispose of the case on the merits was to proceed to trial on September 9, 1968 as scheduled. The trial failed to produce any substantial evidence that the payments to Mrs. Car-

per were really non-taxable gifts. There is no genuine issue as to any material fact necessary to support a determination that the transactions resulted in taxable income.

The motion of the defendant Director of Internal Revenue for a directed verdict is allowed.